Jack A. TURNER et al.

v.

CF&I STEEL CORPORATION and Non-Contributory Pension Plan of CF&I Steel Corporation and the Pension Plan of CF&I Steel Corporation.

Civ. A. No. 77–3916.

United States District Court, E. D. Pennsylvania.

Feb. 6, 1981.

Harry C. Barbin, Barbin, Lauffer & O'Connell, Philadelphia, Pa., for plaintiffs.

Raymond J. Bradley, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for defendants.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

Plaintiffs, two hundred and sixteen former employees and current pensioners of CF&I Steel Corporation ("CF&I") bring this action against CF&I, the Non-Contributory Pension Plan of CF&I ("Non-Contributory Plan") and the Pension Plan of CF&I Steel Corporation ("Master Plan"), alleging in Counts One through Five various violations by one or more defendants of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* and alleging in Count Six violations by all named defendants of Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), Rule 10b–5 thereunder, and Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a).

## I. BACKGROUND

Plaintiffs are all former non-union employees of CF&I who had been employed at CF&I's facilities in Trenton and Roebling, New Jersey, or the widows of such former non-union employees, whose employment began on or before June 30, 1962. All of the plaintiffs are receiving benefits under the Non-Contributory Plan. (Stipulation, ¶ 11). There are 216 named plaintiffs; 29 are now residents of the Eastern District of Pennsylvania, 169 are now residents of New Jersey, 5 are now residents of Florida, 2 are now residents of Colorado and 8 are now residents respectively of Arizona, Connecticut, Georgia, New York, North Carolina and Washington. Since the filing of the complaint, 3 named plaintiffs who were residents of New Jersey have died. (Stipulation, ¶ 12).[1]

CF&I is a Colorado Corporation, having its principal office in Pueblo, Colorado. CF&I is registered to do business in Pennsylvania, and was served with the summons and complaint in this action at its registered office in Philadelphia, Pennsylvania. Both the Non-Contributory Plan and the Master Plan are employee pension benefit plans maintained and sponsored by CF&I. (Stipulation, ¶¶ 2 and 3). The Non-Contributory Plan was established July 1, 1940 by John A. Roebling's Sons ("Roebling's"), a corporation acquired by CF&I in 1952. At that time, Roebling's owned and operated the manufacturing plants and offices in Trenton and Roebling, New Jersey. CF&I maintained the Non-Contributory Plan after acquiring Roebling's; the Plan was amended and restated many times thereafter. (Stipulation, ¶ 5). CF&I established the Master Plan on March 1, 1950; the Plan

---

1. The parties entered into a Stipulation of Facts on September 28, 1978 to submit for consideration in connection with defendants' pre-trial motions. (Stipulation, Docket No. 12).

was also amended and restated many times thereafter. (Stipulation, ¶ 6).

CF&I has made and makes certain contributions to the trustee of the trusts forming part of the Plans to provide for the current and future costs of the pension benefits payable under the terms of each of those Plans.

Since October 1, 1967, Marine Midland Bank, which now has offices at New York, New York and Buffalo, New York, has been the trustee of each of the trusts forming a part of the Non-Contributory Plan and the Master Plan, respectively. From January 1, 1960 until September 30, 1967, the First Pennsylvania Banking and Trust Company, located in Philadelphia, Pennsylvania, had been the trustee of the trust forming part of the Non-Contributory Plan. (Stipulation, ¶ 7).

Under each of these Plans, the trustee performed the following functions: received and deposited contributions to each Plan, invested the assets of each plan, paid expenses of the trust, and paid benefits under each Plan. (Stipulation, ¶¶ 37(a); 38(a)).

CF&I, as sponsor of the Plans, maintained records of the participants of each Plan, received claims for benefits, determined eligibility of claimants for benefits, determined benefit amounts, made determinations on appeals of claim denials, and authorized payment of benefits for each Plan. (Stipulation, ¶¶ 37(b); 38(b)).

Since 1969, when Crane Co. acquired more than 80% of the issued and outstanding stock of CF&I, CF&I has been a subsidiary of Crane Co. Crane Co., which has its executive offices at 300 Park Avenue, New York, New York, has plants, offices and facilities in King of Prussia, Montgomery County, Pennsylvania; Boyertown, Bucks County, Pennsylvania, and Ambridge, Beaver County, Pennsylvania. (Stipulation, ¶¶ 10, 50).

## II. ALLEGATIONS OF THE COMPLAINT

Count One of plaintiffs' complaint alleges that the Non-Contributory Plan and the Master Plan were administered as one Plan, not as separate and distinct Plans, that all terms and conditions, all amendments made, and all increases in benefits were materially the same for both Plans, prior to August 1, 1975. On that date and thereafter, it is alleged that increases in pension benefits were granted those employees under the Master Plan, while plaintiffs, members of the Non-Contributory Plan, received no such increases. Plaintiffs aver that they are entitled to the same increases as the Master Plan retirees under the terms of the Plans and the provisions of ERISA.

Count Two, naming CF&I only, alleges that CF&I violated Sections 104 and 105 of ERISA, 29 U.S.C. §§ 1024, 1025, by failing to provide certain documents and information concerning the pension plans to plaintiff's attorney upon request. Plaintiffs seek the statutory penalty provided in Section 502(c) of ERISA, 29 U.S.C. § 1132(c).

In Count Three, naming CF&I only, plaintiffs allege that CF&I established a Hospital and Medical Insurance Plan and a Life Insurance Plan under which plaintiffs were entitled to certain benefits. Plaintiffs assert that CF&I granted increased benefits under those Plans to similarly situated retirees but not to them, in violation of ERISA.

In Count Four, naming all defendants, plaintiffs seek the award of reasonable attorney fees and costs of the action under Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

In Count Five, plaintiffs allege that defendants CF&I and both Plans reduced the pension benefits of certain of the plaintiffs in retribution for the instant action. Plaintiffs claim this action constituted interference with their rights under Section 510 of ERISA, 29 U.S.C. § 1140.

Finally, in Count Six, plaintiffs allege that the three defendants violated Section 10b of the Exchange Act, 15 U.S.C. § 78j(b), Rule 10b–5 thereunder and Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a) by making misrepresentations and omissions of material facts concerning the increases in

pension benefits to which plaintiffs would be entitled.

The defendants have denied the material allegations of each Count and asserted that plaintiffs received the benefits and the information to which they were entitled. Defendants also raise certain defenses by pretrial motion. The defendant Plans move to dismiss Counts One, Four, Five and Six of the complaint against them (the only Counts in which the Plans are named) for improper venue and lack of personal jurisdiction or, in the alternative, to transfer those Counts to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1406(a). The Plans further move to dismiss Counts One, Four, Five and Six of the complaint against them for improper service of process.

Defendant CF&I moves to dismiss Counts One, Four and Five of the complaint against it on the ground that venue is improper as to the Plans, that the Plans are indispensable parties to the claims asserted in those Counts or, in the alternative, to transfer those Counts to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1406(a). CF&I moves to dismiss Count Two for failure to state a claim against it under the applicable provisions of ERISA. CF&I moves to dismiss Count Three for failure to join indispensable parties, the Hospital and Medical Insurance Plan and Life Insurance Plan.

All defendants move to dismiss Count Six for failure to state a claim under the Securities laws.

In relation to the foregoing motions, the parties have entered into the following Stipulation:

It is hereby stipulated by counsel for plaintiffs and counsel for defendants that this action could have been brought against each of the three named defendants in the United States District Court for the Southern District of New York and that if the Court determines that venue as to any defendant is improper in the Eastern District of Pennsylvania, the action, except insofar as the Court may dismiss any count of the complaint on grounds other than improper venue, should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1406(a)

It is further stipulated that in the event the Court determines that venue is proper in the Eastern District of Pennsylvania as to each of the three named defendants on all counts of the complaint, defendants will not seek a transfer of this action as to any of the counts of the complaint, which are not otherwise dismissed, from the Eastern District of Pennsylvania.

### III.  VENUE

Defendant Plans move to dismiss Counts One, Four, Five and Six of the complaint against them on the basis of improper venue and lack of personal jurisdiction. Defendant CF&I makes a related motion for dismissal of Counts One, Four and Five of the complaint against it urging that venue being improper as to the Plans, argued indispensable parties, these Counts must be dismissed as to CF&I as well. The following discussion concerns itself only with Counts One, Four and Five, the ERISA venue controversy. Venue under Count Six, the alleged Securities Act violation, will not be considered as Count Six must be dismissed for failure to state a claim. *See,* Part VII, *infra.* For the reasons which follow, we find venue proper in this District.

Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), governs the determination of venue under the Act:

Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

Of the three possible grounds for bringing this action in this District, the first, where the plan is administered, can be eliminated

immediately. Plaintiffs do not contend that the Plans are administered in this District. Further, the Stipulation of Facts clearly indicates that the Plans are administered in Colorado. (Stipulation, ¶ 11).

Plaintiffs contend, without citation of authority, that the breach took place in Pennsylvania because 29 of the pensioners live here and receive their pension checks here. Defendants contend that the breach must take place in that District where the decision to pay benefits in the disputed amounts took place (Colorado). Defendants assert that even the mailing to Pennsylvania argument cannot apply to Count Five of the complaint since the only plaintiff there named lived in New Jersey at the time the complaint was filed (but subsequently became a resident of Washington). (Complaint I (125); Stipulation, ¶ 12).

The legislative history of the venue provision is not helpful on this point,[2] and the case law is scant. In *Boyer v. J. A. Majors Company Employees' Profit Sharing Plan*, 481 F.Supp. 454 (N.D.Ga.1979), a Georgia plaintiff claimed that the breach took place in Georgia when the Texas trustee stopped payment on plaintiff's check. The court found that the breach occurred in Texas, where the Plan's Committee instructed the bank to take such action, where the decision was made, and where the Plan was administered. A similar result obtains here where the decisions regarding payment amounts were made in Colorado, and the checks were sent from New York. The breach, if any, occurred in one of those locations.

Venue also lies where "a defendant resides or may be found."[3] CF&I resides or may be found in the Eastern District of Pennsylvania; it is registered to do business in Pennsylvania and its registered office is located in Philadelphia, Pennsylvania. However, the Plans assert that they cannot be found in this district. All defendants insist that the words "*a* defendant" (emphasis supplied) as they appear in the venue provisions of ERISA do not mean that all defendants can be brought into a forum simply because one of them happens to be "found" there. Defendants assert that the "inadvertent" use of the article "a" rather than "the" should not be used to extend the scope of venue thereunder since a venue statute should limit suits to a forum with which each defendant, considered individually, has some contact.

Again the case law provides little assistance.[4] The starting point must be the intent of Congress in enacting ERISA. The policy underlying ERISA is found at 29 U.S.C. § 1001(b):

(b) It is hereby declared to be the policy of this Act to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries . . . . by *providing for appropriate remedies, sanctions, and ready access to the Federal Courts.* (emphasis supplied).

Further, the Committee on Education and Labor of the House of Representatives, reporting on the ERISA draft legislation stated:

The enforcement provisions have been designed specifically to provide both the Secretary and participants and beneficiaries with *broad remedies for redressing*

---

**2.** The legislative history of the venue provision, only one sentence long, essentially repeats the words of the statute; *see* House Conference Report No. 93–1280, 93rd Congress, 2nd Session reprinted in 1974 U.S. Code Congressional and Administrative News, 4639 at 5107. *See, Sprinzen v. Supreme Court of New Jersey*, 478 F.Supp. 722, 724 (S.D.N.Y.1979).

**3.** This language is also found in two other ERISA venue provisions, 29 U.S.C. § 1303(e)(2) (Investigatory Authority) and 29 U.S.C. § 1307(c) (Payment of Premiums). No court has had occasion to construe this particular language under these ERISA venue provisions.

**4.** *Boyer*, supra, at 459 seems to state by implication that "a defendant" ought to be taken literally ("Since the Northern District of Georgia is not the District where . . . a defendant resides or may be found (other than the Company, which has now been dismissed as a defendant) the Court concludes that venue is improper.") *But see, Hammond v. Hernstrom*, C.A. 80–2051 (N.D.Ill. December 8, 1980), ("where defendants in fact reside") (in context of a loose paraphrasing of the statute).

*or preventing violations of the Act. The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities* under state law for recovery of benefits due to participants. For actions in Federal Courts, nationwide service of process is provided in order to remove a possible procedural obstacle to having all proper parties before the Court .... (emphasis supplied) H.R.Rep.No.93–533, 93rd Cong., 1st Sess. 17 (1973), *reprinted in* 1974 U.S.Code Cong. & Admin.News p. 4639, 4655.

As noted in *Lewis v. Merrill Lynch*, 431 F.Supp. 271 (E.D.Pa.1977), the remedies available under ERISA are "responsive to the policy of ready access to Federal Courts ...." *See, Bonin v. American Airlines, Inc.*, 621 F.2d 635, 636, n.1 (5th Cir. 1980) ("A potential ERISA plaintiff is granted a wide choice of Federal court venue, liberal service of process rules and relief from the jurisdictional amount requirement."). Thus, the issue of venue must be approached with the broad Congressional policy favoring free access to federal courts in mind.

Instructive in this regard is *Varsic v. United States District Court*, 607 F.2d 245 (9th Cir. 1979), where the circuit court granted a writ of mandamus to rescind the lower court's order transferring an action for pension benefits. The court first decided that a pension fund can reside or be found in a district where the fund is not administered. Next, the court reviewed the meaning of the word "found" as used in other venue provisions, particularly the antitrust venue provision, 15 U.S.C. § 15, and the copyright venue provision, 28 U.S.C. § 1400(a), noting that the latter provision has been interpreted to mean that a corporation is found in any district in which personal jurisdiction may be obtained over it. The court's view was that "found"

should have the same broad application under ERISA; "[t]herefore, if personal jurisdiction is properly asserted over the fund, it is 'found' there." *Varsic, supra* at 248. The court held that the fund's contacts with the forum, where the pensioners had been employed, being sufficient to support personal jurisdiction, venue was appropriate under ERISA.

A similar result was reached in *Nestor v. Hershey*, 425 F.2d 504 (D.C.Cir.1969), where the court interpreted the meaning of "a defendant" in another federal venue statute, 28 U.S.C. § 1391(e).[5] The court interpreted the words "a defendant" literally and held the forum appropriate for all other defendants, so long as personal jurisdiction could be obtained. *Cf., Hartke v. Federal Administration*, 369 F.Supp. 741 (E.D.N.Y. 1973); *Kings County Economic Community Development Association v. Hardin*, 333 F.Supp. 1302 (N.D.Cal.1971). The interpretation of this clause was not questioned in *Stafford v. Briggs*, 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980), which held the venue provisions of § 1391(e) to apply only to actions against a federal officer in his official capacity and not to actions for money damages brought against a federal official in his individual capacity.

■ In light of Congressional policy, case law, and a literal reading of the statute, we find that since a defendant, CF&I, may be sued in this District, this forum is appropriate as to the other defendants, the Plans, so long as personal jurisdiction has been properly asserted as to them.

As in *Varsic*, the court must determine whether the Plans "have certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' ... an essential criterion in all cases is whether the 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that state." *Kulko v. Superior Court of California*, 436 U.S. 84,

---

**5.** Providing for venue and process in civil actions against federal officers, employees, or agencies. *See,* Annot. 9 A.L.R.Fed. 719 (1971) collecting cases applying 28 U.S.C. § 1391(e).

92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132, 141 (1978), *rehearing denied*, 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150 (1978).

Such contacts exist between the Plans and this District. Twenty-nine pensioners served by the Plans live in Pennsylvania, receive their benefits here and send their communications to the Plans from here, a foreseeable circumstance because the work which gave rise to pension benefits was performed nearby in New Jersey. Furthermore, the Plans are intimately related to CF&I itself, an entity admittedly found in this District. CF&I sponsors the Plans, maintains participant records, receives claims for benefits, determines claimant's eligibility for benefits, determines the amount of benefits, authorizes benefit payments and decides appeals of claim denials. (Stipulation, ¶¶ 37(b), 38(b)). The Plan booklets also indicate that CF&I has substantial control over these Plans.[6] Unfairness does not result from allowing suit against these Plans in a forum where a large number of its beneficiaries reside, and where their corporate sponsor, with which the Plans are so closely associated, is registered to do business; venue lies in this forum as to the Plans. Defendant CF&I's motion to dismiss on the ground that no personal jurisdiction can be obtained here over the Plans, who are indispensable parties, is denied.

---

**6.** "The Plan booklets distributed to the participants, including the Plaintiffs (Comp. 16, Exhibit "A") provide that the administration of the Plans shall be in charge of a General Pension Board appointed by the Board of Directors of CF&I, to serve at the pleasure of such Board.

The amended and restated Plan documents, effective January 1, 1976 (Stip. 13, 14), provide as follows with respect to the control, administration and operation of the Plans:

(1) The administration of the Plan shall be in charge of a General Pension Board, appointed by the Board of Directors of CF&I, to serve at the pleasure of such Board of Directors (Sec. 9.1).

(2) CF&I shall have the authority to control and manage the operation and administration of the Plan (Sec. 9.5).

(3) CF&I may appoint persons or committees to control and manage the operation and administration of the Plan and allocate responsibilities between such persons (Sec. 9.6).

Defendant Plans' motion to dismiss for lack of personal jurisdiction must also be denied. Defendants asserted that personal jurisdiction over the Plans had not been obtained because the Plans were served not in this District but in Pueblo, Colorado. This contention relied on the theory that because venue was improper as to the Plans, there was no nationwide service of process under ERISA. Since the court finds venue proper as to the Plans, this argument fails.

## IV. SERVICE OF PROCESS

█ Service of process on the Plans is governed by Section 502(d)(1) of ERISA, 29 U.S.C. § 1132(d)(1):

An employee benefit plan may sue or be sued under this title as an entity. Service of summons, subpena, or other legal process of a court upon a trustee or an administrator of an employee benefit plan in his capacity as such shall constitute service upon the employee benefit plan. In a case where a plan has not designated in the summary plan description of the plan an individual as agent for the service of legal process, service upon the Secretary shall constitute such service. The Secretary, not later than 15 days after receipt of service under the preceding sentence, shall notify the administrator or any trustee of the plan of receipt of such service.

(4) CF&I appoints the Administrator of the Plan, investment managers and delegates functions to the General Pension Board (Sec. 9.7).

(5) The Administrator of the Plan may appoint persons to carry out duties, subject to approval of CF&I (Sec. 9.8).

(6) CF&I's consent is necessary for the employment of persons to render advice with respect to the Plan (Sec. 9.12) [Sec. 9.10].

(7) Trustee of the pension trust, established to fund the benefits under the Plan, is appointed by CF&I and is subject to the direction of CF&I with respect to investments (Sec. 9.13).

(8) CF&I has the right to modify or amend [or terminate] the Plans at any time (Sec. 10.5)."

Plaintiffs' Answer to Defendants' Pretrial Motions, at 20–21.

The Pension Plans were served by personal delivery of the summons and complaint to the Assistant Secretary of CF&I in Pueblo, Colorado. Plaintiffs contend that CF&I is the administrator of the Plans, and hence it was properly served. Plaintiffs rely on the section quoted above and upon certain definitions in the statute, 29 U.S.C. § 1002:

> 16(a) The term "administrator" means (i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor . . . .
>
> (b) The term "plan sponsor" means (i) the employer in the case of an employee benefit plan established or maintained by a single employer . . . .

The plaintiffs claim that L. E. Hegstrom was not the statutory administrator, even though he was named as administrator in an intra-company memorandum dated June 6, 1977 (Stipulation, ¶ 24, Exhibit 11), Form 5500, Annual Reports for 1976 for both Plans (Stipulation ¶¶ 25, 26; Exhibits 12, 13), the Summary Annual Reports for both Plans (Stipulation ¶¶ 27, 28; Exhibits 14, 15), and Summary Plan Descriptions for both Plans (Stipulation ¶¶ 29, 30; Exhibits 16, 17, 18, 19). Some of these documents were received by the plaintiffs at their residences; the Summary Plan Description was received after the lawsuit commenced. Plaintiffs make the assertion that Hegstrom was not "specifically designated by the terms of the instrument under which the Plan is operated." This is urged despite the fact that plaintiffs' counsel had actual knowledge that Hegstrom was administrator, and had written to the former administrator, Galvin, acknowledging him in that role before he was succeeded by Hegstrom. (Stipulation, ¶¶ 31, 32; Exhibits 20, 21). CF&I counters that 16(A) of 29 U.S.C. § 1002 means only that the administrator must have been designated pursuant to procedures established by the terms of the instrument, not that an administrator be designated by name in the instrument itself. CF&I has designated Hegstrom as administrator pursuant to procedures established by the instrument; it also has given notice to the Department of Labor, the Internal Revenue Service, and Plan beneficiaries, including plaintiffs, of its named administrator.

CF&I's interpretation is the better one in considering not only the statutory language but also the impracticality of amending the Plan instrument itself with every change of administrator.

Hegstrom, the administrator during the relevant time period, was not served. However the complaint was served upon D. B. Cool, assistant secretary of CF&I, at 215 Canal Street, Pueblo, Colorado. (Stipulation, ¶ 2). Hegstrom's address at CF&I was 225 Canal Street, Pueblo, Colorado. (Exhibits 14, 19). Mr. Cool neither refused to accept the summons and complaint nor directed the United States Marshal to the appropriate office. Under these particular circumstances, where defendants clearly had notice of the suit, service will be held proper. The motion of defendant Plans to dismiss on grounds of improper service is denied.

## V. DISMISSAL OF COUNT TWO FOR FAILURE TO STATE A CLAIM

■ Count Two asserts a claim only against CF&I, as administrator of the Plans, for violation of Sections 104 and 105 of ERISA, 29 U.S.C. § 1024 and 1025, in the alleged failure to provide plaintiffs' attorney with certain requested documents and information concerning the Plans. Plaintiffs seek the statutory penalty provided by Section 502(c) of ERISA, 29 U.S.C. §§ 1132(c):

> Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such partici-

pant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

The statute by its terms states that the *administrator* is personally liable under this penalty provision. *See, Anderson v. Tuckpointers Local No. 52 Pension Trust Fund,* C.A. 79–2374 (N.D.Ill. June 3, 1980). CF&I is not the administrator and the administrator is and was known to plaintiffs' counsel. Indeed, plaintiffs' counsel sent the written request for information alleged to have been improperly refused to Galvin, then the administrator, and stated, "[i]t is our understanding that you are the Plan Administrator of the CF&I Pension Plans." (Stipulation, ¶ 31, Exhibit 20).

In *Golden v. Kentile Floors, Inc.,* 344 F.Supp. 807, 811 (N.D.Ga.1972), *aff'd,* 475 F.2d 288 (5th Cir. 1973), a decision under the predecessor to the instant civil penalty provision, the court said:

> The penalty referred to under 29 U.S.C. § 308(b) [of the Welfare and Pension Plans Disclosure Act] *is assessible only against an 'administrator' of a covered plan.* The definition of 'administrator' under 29 U.S.C.A. § 304(b) can by no stretch of the imagination contemplate the position held by the Trustee. *The committee is clearly the administrator of the trust and the only one to whom this liability may be attributable.* (emphasis supplied).

*But see, Hales v. Winn-Dixie Stores,* 500 F.2d 836 (4th Cir. 1974) (employer held administrator where employer was the person "with responsibility for the *ultimate* control, disposition, or management" of fund moneys within meaning of predecessor statute's language).

In this case plaintiffs had actual knowledge of the administrator's identity and the statute provides only for personal liability of the administrator. Because CF&I was not the administrator, CF&I's motion to dismiss Count Two of the complaint for failure to state a claim under Sections 104, 105 and 502(c) of ERISA against it will be granted.

## VI. DISMISSAL FOR FAILURE TO JOIN INDISPENSABLE PARTIES.

In Count Three of the complaint, plaintiffs allege that CF&I established a Hospital and Medical Insurance Plan and a Life Insurance Plan ("Insurance Plan") under which plaintiffs were entitled to benefits. Plaintiffs further allege that increased benefits under those Plans were awarded to similarly situated non-union retirees but not to them in violation of ERISA. The Plans are not joined as defendants in Count Three or in any other Count of the Complaint.

Defendants urge that the Insurance Plans are indispensable parties. Alleging that they cannot be joined in this action because venue is lacking, they move for dismissal under Rule 19 which, in relevant part, provides for

*Joinder of Persons Needed for Just Adjudication*

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) *Determination by Court Whenever Joinder not Feasible.* If a person as de-

scribed in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

■ Decisions under Rule 19 can be made only in the context of particular litigation, there being no prescribed formula for determining in every case whether a person is an indispensable party. *Provident Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). *See, Republic Realty Mortgage Corp. v. Eagson Corp.*, 68 F.R.D. 218 (E.D.Pa.1975) ("Rule 19 entails a pragmatical rather than a 'litmus paper' approach focusing upon realistic analysis of the facts of each case.").

An orderly analysis of a Rule 19 problem begins with a consideration of 19(a). If the Insurance Plans are not entities "to be joined if feasible," it is unnecessary to consider their indispensability under Rule 19(b). *See, Camden Securities Company v. Lupowitz*, 500 F.Supp. 653 (E.D.Pa.1980). The initial inquiry is whether complete relief can be afforded plaintiffs and defendants CF&I and the Pension Plans in the absence of the Insurance Plans. Plaintiffs' prayer for relief in Count Three includes a request for payment by CF&I of past benefits which plaintiffs did not receive, and the ordering in the future of the same increases to plaintiffs as are provided to other retirees of CF&I.

The terms and conditions of the Insurance Plans would ordinarily govern the rights of the beneficiaries thereunder. It is unclear from the record who controls the assets of the Insurance Plans although under ERISA the Plans as entities would have such control. Thus, should plaintiffs prevail here, it might be necessary to bring another lawsuit to compel the Plans to provide benefits to the plaintiffs. The Plans, not being parties to this litigation, might not be bound by the result reached here.

The Insurance Plans do have "an interest relating to the subject of the action;" that is, the payment of funds in the proper amount to its beneficiaries. Fed.R.Civ.P. 19(a)(2). Were the court to proceed without the Plans as parties, the entities having control over the assets in question would not be able to defend the past distribution of fund assets or to protect themselves against the claim on their assets in the future. Thus, the Insurance Plans meet the criteria of "persons to be joined if feasible" under Rule 19(a).

CF&I would have the court determine now that the Insurance Plans are such indispensable parties that the action must be dismissed because they cannot be joined (Fed.R.Civ.P. 19(b)). CF&I asserts that venue is improper as to the Insurance Plans, so that dismissal is the only proper remedy under Rule 19(b).

However, the Rule by its own terms requires dismissal of the joined party, "*[i]f the joined party objects to venue and* his joinder would render the venue of the action improper." (emphasis supplied); *see* 7 Wright & Miller, Federal Practice and Procedure § 1604, at p. 35 (1972) ("Difficulties arise only if the absentee cannot be effectively joined because he is not subject to service of process, if his joinder will deprive the Court of subject matter jurisdiction *or if he makes a valid objection to the Court's venue after joinder*.") (emphasis supplied). The only basis which CF&I has raised for finding joinder impossible is that of alleged improper venue as to the Insurance Plans.

■ It would be premature to assume that the Insurance Plans will make an objection to venue if joined; or that joinder

will render venue improper; thus the determination of whether Count Three must be dismissed as to CF&I is inappropriate at this time. Therefore, the court will order that the CF&I Hospital and Medical Insurance Plan and the CF&I Life Insurance Plan be joined in this action as defendants to Count Three only.·

## VII. DISMISSAL OF COUNT SIX FOR FAILURE TO STATE A CLAIM

Plaintiffs seek relief in Count Six against the Non-Contributory Plan, the Master Plan, and CF&I for alleged violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5, and Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

■ Count Six will be dismissed for failure to state a claim upon which relief can be granted. During the pendency of these motions, the Supreme Court in *International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Daniel*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979), held that the federal securities laws do not apply to non-contributory, compulsory pension plans. The Pension Plans are funded entirely by employer contributions (See, Complaint, ¶ 23), hence are non-contributory. The Plans provide for automatic participation by employees (Stipulation, Exhibits 1 and 2), hence are non-contributory. The Plans provide for automatic participation by employees (Stipulation, Exhibits 1 and 2), hence are compulsory. *See, Camp v. Guercio*, 464 F.Supp. 343 (W.D.Pa.1979). Count Six fails to state a cause of action and is dismissed.