**CITY OF HOPE NATIONAL MEDICAL CENTER, Plaintiff,**

v.

**SEGUROS DE SERVICIOS DE SALUD DE PUERTO RICO, INC.; Health Plus, Inc.; American Airlines Employee Benefit Plan; Roe Employee Benefit Plan and Does 1 Through 100, Inclusive, Defendants.**

**Civ. No. 95–2488(PG).**

United States District Court,
D. Puerto Rico.

Oct. 27, 1997.

Gary L. Tysch, Sherman Oaks, CA, for Plaintiff.

César T. Alcover, San Juan, PR; Gregory T. Usera, San Juan, PR; Jorge E. Pérez Díaz, Hato Rey, PR; Harry A. Ezratty, San Juan, PR, for Defendants.

1. Defendant Triple–S was erroneously denominated in the complaint as Seguros de Servicios de Salud de Puerto Rico.

2. Plaintiff alleges in its opposition to American Airlines Motion for Summary Judgment that defendant American Airlines lacks standing to file this motion because the complaint was filed against the American Airlines Employee Benefit Plan and not against American Airlines, Inc.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

This action was brought by City of Hope National Medical Center against Triple–S, Inc.,[1] PCA Health Plans of Puerto Rico, Inc. (formerly Health Plus, Inc.), and American Airlines Employee Benefit Plan [2] to collect the cost of medical treatment provided by Plaintiff. Federal subject matter jurisdiction arises under the Employment Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. § 1001 *et seq.* All three defendants have filed separate motions for summary judgment which are now before the Court.

### I. BACKGROUND

María D. Díaz was a participant in an employee welfare benefit plan sponsored by her husband's employer American Airlines.[3] The primary insurance carrier was Triple–S, and Health Plus was the secondary insurance carrier.

On or about January 1993, Mrs. Díaz was diagnosed with acute myeloid leukemia. She was successfully treated with chemotherapy in Puerto Rico and sustained remissions of the disease for a period of time. After a relapse, she continued her treatment at the Memorial Sloan Kettering Hospital in New York and was later referred to City of Hope National Medical Center in California, for the purpose of undergoing high-dose chemotherapy with bone marrow transplantation ("HDCT/ABMT"). She was admitted to City of Hope on January 14, 1993. Subsequently, both insurance carriers denied coverage. Triple–S denied coverage on January 29, 1993 and again on February 23, 1993, on the grounds that Mrs. Díaz' insurance did not cover organ transplants. Health Plus denied coverage on June 1, 1993 on the grounds that Mrs. Díaz had not complied with procedural

However, in view of the disposition of the case, we find it unnecessary to address this issue.

3. Mrs. Díaz was a participant in the plan as a dependant. Her husband Luis Díaz was an employee of American Airlines and, accordingly, he and his family participated in the HMO Deluxe plan for medical insurance and health care services which was offered by American Airlines to its employees.

requirements for coverage of services rendered by a health care provider who has not entered into an agreement with Health Plus or a Health Plus Primary Provider Group as required by the contract between Health Plus and American Airlines HMO Deluxe enrollees.

On April 11, 1993, Mrs. Díaz signed a document assigning her rights under any applicable insurance policy to City of Hope. Consequently, City of Hope, in its capacity as assignee, sued defendants to collect the cost of medical treatment it provided to Mrs. Díaz.

In their motions, defendants present several arguments on why summary judgment should be granted in their favor.[4] Since most of the issues presented overlap, we will address the motions jointly.

## II. STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, a summary judgment motion should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled

to judgment as a matter of law." Fed. R.Civ.P. 56. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[G]enuine disputes over material facts can only sprout out of competent and reasonably definite evidence actually contained in the record." *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 253 (1st Cir.1996).

## III. STANDING

■ Both American Airlines and Triple–S raise the issue of City of Hope's lack of standing. ERISA's civil enforcement provision provides that a civil action may be brought under ERISA by a plan "participant," "beneficiary," or "fiduciary," or by the Secretary of Labor. 29 U.S.C. § 1132(a).[5] In their motions for Summary Judgment, Triple–S and American Airlines argue that Plaintiff lacks standing to bring an action under ERISA because it does not fall under any of these categories. In response, Plain-

---

4. American Airlines filed for summary judgment arguing: (1) Plaintiff's lack of standing; (2) American Airlines is not a fiduciary to the Plan and therefore not responsible for any claim regarding benefits; (3) failure to exhaust administrative remedies under the Plan and under ERISA § 503; (4) health care services provided by City of Hope are not covered by the Plan for failure to request pre-authorization as required by the Health Plus' insurance policy; (5) denial of benefits was not submitted to arbitration as required by the contract. Triple–S requested summary judgment on the grounds that (1) City of Hope lacked standing to sue; (2) the unambiguous terms of the Triple–S policy prohibit any alleged assignment of rights under the policy; (3) the Triple–S policy excludes from coverage any costs incurred as a result of organ or tissue transplant. Finally, PCA argued that summary judgment was warranted because (1) neither Mrs. Díaz or City of Hope ever request pre-authorization as required by the terms of the insurance contract, and (2) plaintiff failed to exhaust administrative remedies.

5. ERISA's civil enforcement provision provides: A civil action may be brought—
(1) by a participant or beneficiary—(A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him

under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
(4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title;
(5) except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter; or
(6) by the secretary to collect any civil penalty under subsection (i) of this section.
29 U.S.C. § 1132(a).

tiff contends that it is has beneficiary status as a designated assignee, and that, as such, it stands in the shoes of Mrs. Díaz and has derivative standing to sue under ERISA.

■ Even though § 1132(a) is explicit in its enumeration of parties with standing to sue under ERISA, there has been some debate on whether Congress' grant of jurisdiction is exclusive to the four types included in § 1132(a). *See Fentron Ind. v. National Shopmen Pension Fund,* 674 F.2d 1300, 1305 (9th Cir.1982) (holding that an employer had standing to sue under ERISA and that the omission of employers from ERISA's civil enforcement provision is not significant because there is "nothing in the legislative history to suggest either that the list of parties empowered to sue under this section is exclusive or that Congress intentionally omitted employers"). Nevertheless, in accordance with First Circuit authority, and in agreement with the majority view, this Court finds § 1132(a) exclusively limits standing to the parties listed therein. *See Kwatcher v. Massachusetts Serv. Emp. Pension Fund,* 879 F.2d 957, 965 (1st Cir.1989) (holding that "since Congress has carefully catalogued a selected list of persons eligible to sue under ERISA, there is no plausible rationale for [the Court to] gratuitously . . . enlarge the

roster"); *Giardono v. Jones,* 867 F.2d 409, 412–13 (7th Cir.1989); *Stanton v. Gulf Oil Corp.,* 792 F.2d 432, 434 (4th Cir.1986); *Pressroom Unions–Printers League Income Sec. Fund v. Continental Assurance Co.,* 700 F.2d 889, 892 (2d Cir.1983); *see also Dalehite v. United States,* 346 U.S. 15, 30–31, 73 S.Ct. 956, 964–66, 97 L.Ed. 1427 (1953) (recognizing the jurisprudential principle that absent clear mandate from Congress, courts cannot assume jurisdiction). Plaintiff's allegations, however, present a different question: whether a health care provider has standing to sue under ERISA as the assignee of the beneficiary of a plan. Lacking authority from our circuit, we find persuasive the approach taken by five other circuit courts.

The Fifth, Seventh, Eighth, Ninth, and Eleventh Circuits have held that an assignee has derivative standing to sue an ERISA covered medical benefits plan.[6] *See Cagle v. Bruner,* 112 F.3d 1510, 1515 (11th Cir.1997) (holding that "neither § 1132(a) nor any other ERISA provision prevents derivative standing based upon an assignment of rights from an entity listed in that subsection"); *Lutheran Med. Ctr. v. Contractors Health Plan,* 25 F.3d 616, 619 (8th Cir.1994) (noting that nothing in ERISA prohibits a plan par-

**6.** The Third Circuit, on the other hand, stated in a footnote in *Northeast Department ILGWU Health and Welfare Fund v. Teamsters Local No. 229 Welfare Fund* that assignees may not sue under § 1132(a)(1)(B) because Congress did not list them in the section:

> First Congress simply made no provision in § 1132(a)(1)(B) for persons other than participants and beneficiaries to sue, including persons purporting to sue on their behalf. Second, the intentions of the parties and the district court regarding federal jurisdiction are irrelevant to the determination whether such jurisdiction exists. Third, [the beneficiary of the plan] did not, in fact make an assignment of her claim to the ILGWU.... Moreover, even if [the beneficiary] had actually assigned her claim to the ILGWU Fund, we have serious doubts whether she could assign along with her substantive rights, her right to sue in federal court.

764 F.2d 147, 153–54 & n. 6 (3d Cir.1985). The district courts in that circuit, however, reflect conflicting views. While some courts have held that a health care provider may sue under § 1132, others have held that it may not. *Compare Children's Hosp. of Pittsburgh v. 84 Lumber*

*Co. Med. Benefits Plan,* 834 F.Supp. 866, 869 (W.D.Pa.1993) (holding that plaintiff may be deemed a beneficiary under § 1002(8) and that it has standing to sue under § 1132(a)(*l*)(B)), *Albert Einstein Med. Ctr. v. National Ben. Fund for Hosp. & Health Care Employees,* 740 F.Supp. 343, 350 (E.D.Pa.1989) (relying on the Ninth Circuit's *Misic* decision and holding that ERISA benefits are assignable) *and Northwestern Inst. of Psychiatry, Inc. v. Travelers Ins. Co.,* 1992 WL 236257, at *4 (E.D.Pa. Sept.3, 1992) (holding that in light of the alleged assignment under the ERISA plan, plaintiff may be deemed a beneficiary and can sue under § 1132(a)(*l*)(B)) *with Health Scan, Ltd. v. Travelers Ins. Co.,* 725 F.Supp. 268, 269 (E.D.Pa.1989) (relying on the Third Circuit opinion in *Northeast Dept. ILGWU Health and Welfare Fund v. Teamsters,* and holding that standing under ERISA does not extend to assignees of plan benefits) *and Allergy Diagnostics Lab. v. Equitable,* 785 F.Supp. 523, 527 (W.D. Pa. 1991) ("Standing under ERISA does not extend to assignees of participant beneficiaries because Congress simply made no provision in § 1132(a) for unenumerated persons to sue."). This Court rejects this approach in favor of the majority view adopted by the Fifth, Seventh, Eighth, Ninth and Eleventh Circuits.

ticipant from assigning a cause of action to a health care provider and that "denying standing to health care providers as assignees of beneficiaries may undermine the goal of ERISA"); *Kennedy v. Connecticut Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir.1991) (finding that "§ 1132(a)(1)(B) supplies jurisdiction when a provider of medical services sues as assignee of a participant"); *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1289–90 (5th Cir.1988) (holding that ERISA allow the assignment of health care benefits and that this assignment is sufficient to create derivative standing); *Misic v. Building Serv. Employees Health and Welfare Trust*, 789 F.2d 1374, 1376, 1379 (9th Cir.1986) (concluding that ERISA "does not forbid assignment by a beneficiary of his right to reimbursement under a health care plan to the health care provider" and that as assignees the health care provider "has standing to assert the claims of his assignors").

■ These decisions hinge on the question of whether ERISA allows for the assignment of rights under a policy. All five courts agree that nothing in ERISA prohibits a plan participant or beneficiary from assigning his rights to a health care provider and that "the absence of any anti-assignment provision applicable to health care benefits takes on added significance in view of the fact that ERISA expressly prohibits the assignment of pension benefits governed by ERISA." *Ca-*

gle, 112 F.3d at 1515. *See also Hermann, supra,* at 1289; *Misic, supra,* at 1376. We agree with this approach. In light of the general purposes of ERISA and the absence of an explicit prohibition, we hold that § 1132(a) does not prevent a beneficiary from assigning his reimbursement rights under a health care plan to his health care provider. Moreover, as the assignee of a beneficiary, the health care provider acquires derivative standing and is able to sue as a "beneficiary" [7] by standing in the shoes of his assignor [8] It is, however, imperative that the assignment of rights be valid.[9] *See Kennedy, supra,* at 700 ("[A]n assignee cannot collect unless he establishes the assignment comports with the plan. . . . Only if the language of the plan is so clear that any claim as an assignee must be frivolous is jurisdiction lacking."). In addition, since it is standing in the shoes of its assignor, the health care provider can only exercise the rights that the assignor had under the plan. *See id.*

■ The Triple–S policy contract provides in Part VI(14): "The insured may not cede, transfer or assign any of the rights and benefits under the policy . . . ." (Triple–S Mot. Summ. J., Exh. A) (Dkt.# 88)(translation ours). The Health Plus policy provides in Section XVIII(M): "All entitlements of a member to receive covered rights are personal and may not be assigned." (PCA Mem. in Supp. Mot. Summ. J., Exh. 1)

7. ERISA defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). It defines "person" as "an individual, partnership, joint venture, corporation, mutual company,joint stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9). Thus, by virtue of the assignment, City of Hope could ostensibly become a beneficiary—i.e. one designated by a participant to become entitled to a benefit under the plan.

8. For a list of cases reflecting the premise that a valid assignment confers standing upon the assignee see *Misic,* 789 F.2d at 1378.

9. A number of courts have held that while the Congressional silence regarding the assignment of ERISA benefits means that assignments are not barred, it does not follow that non-assignment clauses are to be prohibited as contrary to public policy. *See Davidowitz v. Delta Dental*

*Plan of California, Inc.,* 946 F.2d 1476, 1478–79 (9th Cir.1991); *see also Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.,* 947 F.2d 1341, 1346 (8th Cir.1991) (holding that a state statute prohibiting non-assignment clauses was pre-empted by ERISA); *Kennedy, supra,* at 700 (holding that "an assignee cannot collect unless he establishes that the assignment comports with the plan"); *Parkside Lutheran Hosp. v. R.J. Zeltner & Ass., Inc.,* 788 F.Supp. 1002, 1005 (N.D.Ill. 1992) (finding that health care plan at issue precluded beneficiary from assigning benefits to health care provider and that, consequently, Plaintiff has no colorable claim to benefits); *Washington Hosp. v. Group Hospitalization and Med. Serv., Inc.,* 758 F.Supp. 750, 755 (D.D.C. 1991) (upholding anti-assignment clause). *But see Lutheran Med. Ctr. v. Contractors Health Plan,* 25 F.3d 616, 619–20 (8th Cir.1994) (holding that an anti-assignment clause did not prevent Plaintiffs from suing the plan for reimbursement).

(Dkt.# 80). Moreover, the document through which Mrs. Díaz purportedly assigned her rights to City of Hope states in relevant part: *"To the degree permitted under any applicable insurance policy,* health care service plan, third party payor agreement, or other applicable benefits ... the undersigned ... hereby irrevocably assigns to the hospital any and all rights and interests in insurance profits, benefits of policy provisions payable to or on behalf of patient." (Decl. of Pl.'s Counsel in Supp. Opp. to Def.'s Mot. for Non–Resident Bond, Exh. A) (Dkt.# 18) (emphasis ours). It is evident from the terms of the two policy agreements and the assignment letter, that Mrs. Díaz purported assignment of rights to City of Hope is invalid. Under the clear terms of the two contracts, Mrs. Díaz could not assign her rights to City of Hope. Moreover, the terms of the assignment letter expressly condition the assignment "to the degree permitted by any applicable insurance policy." Since the policies did not allow such an assignment of rights there is no valid assignment and, therefore, City of Hope lacks standing to sue.

### IV. RIGHTS UNDER THE TWO POLICIES

Even if City of Hope were to have standing to sue under a valid assignment, it could only sue for reimbursement of expenses covered by the policies. As assignee, City of Hope stands in the shoes of its assignor, Mrs. Díaz, who, in turn, could only assign to City of Hope the rights that she herself had under the two policies. Therefore, City of Hope has no more rights than Mrs. Díaz had.

#### A. Triple–S Insurance Policy

■ Triple–S argues in its motion that the treatment at issue is not covered under its insurance policy. The Triple–S' insurance contract, section IV entitled "Exclusions and Limitation," provides in relevant part:

This policy does not provide coverage for the following expenses and/or services:

. . . .

22. Expenses incurred as a result of organ or tissue transplantation (e.g.

heart, heart-lung, kidney, liver, pancreas, *bone marrow*, etc.) . . . .

Triple–S Contract, Section IV. (Triple–S Mot. Summ. J., Exh. A) (Dkt.# 88) (emphasis and translation ours). Under the terms of the Triple–S insurance policy contract Mrs. Díaz did not have a right to insurance coverage for bone marrow transplantation. Thus, she could not assign to City of Hope a right to reimbursement for expenses incurred in the performance of such a procedure. Since Mrs. Díaz does not have coverage under the plan, City of Hope cannot receive reimbursement.

#### B. Health Plus Insurance Policy

■ Coverage for bone marrow transplants is available under the Health Plus HMO Deluxe plan. In this case, however, there are a number of restrictions to the availability of coverage. PCA argues that neither Mrs. Díaz or City of Hope ever requested pre-authorization for out-of-network health services as required by the insurance contract.

#### 1. The pre-authorization requirement

The Health Plus policy contract provides:

Unlike traditional insurance policies, which pay claims once the service has been provided, HPI makes advance arrangements with hospitals and doctors to provide care for its members, and it pays these providers directly for their services. The covered services are available only through the plan's providers . . . .

Health Plus HMO Deluxe Contract, Section I. (PCA Mem. in Supp. Mot. Summ. J., Exh. 1) (Dkt.# 80). As exceptions to this provision, the plan provides:

IMPORTANT: No coverage will be provided under any health services rendered by a health services provider who has not executed a contract with HPI or a PPG contractor with HPI, except according to Section VI.C (Emergency Health Services) and Section VII (Health Services Provided by Nonaffiliated Providers) hereof.

*Id.* at Section VI. Section VII provides in turn:

Health Services referrals, which are not emergency services, rendered by non-affiliated providers must be requested and recommended in writing by the affiliated physician and previously authorized by HPI. *Id.*

It is undisputed that City of Hope did not have a contract with Health Plus to provide services to HMO Deluxe plan beneficiaries. Accordingly, under the terms of the plan, Mrs. Díaz should have requested coverage in writing, and such coverage had to be previously authorized by Health Plus. Mrs. Díaz never complied with these procedures, and neither did City of Hope. Moreover, Plaintiff has failed to offer any evidence to refute this non-compliance. When a party who files for summary judgment alleges that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the non-moving party bears the burden of showing the existence of some factual disagreement sufficient to defeat the motion. *See* Fed.R.Civ.P. 56(e); *Anderson, supra*, at 250, 106 S.Ct. at 2511; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *United States v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992) ("On issues where the nonmovant bears the burden of proof, he must present definite, competent evidence to rebut the motion."); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49 (1st Cir.1990) (noting that "a mere promise to produce admissible evidence at trial does not suffice to thwart the summary judgment ax"); *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990) (stating that in summary judgment motions "there is a burden of production: the party opposing the motion 'must set forth specific facts showing that there is a genuine issue for trial' " (quoting Fed. Civ. P. 56(e))); *Brennan v. Hendrigan*, 888 F.2d 189, 191

(1st Cir.1989) (holding that plaintiff cannot present "mere allegations but must adduce, specific, probable facts demonstrating that there is a triable issue"). "In this context 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party; 'material' means that the fact is one 'that might affect the outcome of the suit under the governing law.' " *One Parcel of Real Property, supra*, at 204 (citing *Anderson, supra*, at 248, 106 S.Ct. at 2510). Even though, there appears to be some dispute regarding exactly when and how was Health Plus notified of City of Hope's services to Mrs. Díaz, by Plaintiff's own allegations, Health Plus was not notified until after the date treatment was first rendered.[10] (Pl.'s Mem. in Supp. Opp. to PCA's Mot. Summ. J. at 13–14) (Dkt.# 84). Moreover, there is no evidence to the effect that authorization was requested in writing. In light of this, we find that any factual discrepancy that might exist regarding the date of notification is neither "genuine" or "material."

The First Circuit had repeatedly held that "straightforward language in an ERISA–regulated insurance policy should be given its natural meaning." *Burnham v. Guardian Life Ins. Co. of America*, 873 F.2d 486, 489 (1st Cir.1989). *See also Hughes v. Boston Mut. Life Ins. Co.*, 26 F.3d 264, 268 (1st Cir.1994); *Rodríguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 586 (1st Cir.1993); *Bellino v. Schlumberger Tech., Inc.*, 944 F.2d 26 (1st Cir.1991). Under the clear terms of the policy agreement, compliance with pre-authorization procedures was a necessary prerequisite for coverage of services rendered by non-affiliated providers. This pre-authorization procedures were never complied with. Hence, in the instant case, there was no coverage available under the

---

**10.** Plaintiff contends that City of Hope was notified "almost immediately after the date that treatment was commenced." (Pl.'s Mem. in Supp. Opp. to PCA's Mot. Summ. J. at 13–14) (Dkt.# 84). Defendant, on the other hand, alleges that City of Hope did not request coverage from Health Plus until February 1993, one month after Mrs. Díaz' treatment had commenced. (PCA Stat. of Mat. Facts at 3) (Dkt.# 80). The discrepancy seems to lie in the fact that City of Hope is focusing on the date of

"notification," whereas Health Plus is pointing to the date in which coverage was in fact requested. Neither party has submitted evidence regarding a specific date. We find, however, that specific dates are not that important in light of the fact that both parties agree, by their own allegations, that Health Plus was not notified until after treatment had commenced, whether it be "immediately after" or one month later, and this admission, by itself, violates the provisions of the plan.

policy, and City of Hope cannot recover from PCA for the services it provided Mrs. Díaz.[11]

### 2. The "Emergency Health Services" exception

■ In its response to PCA's arguments, Plaintiff also contends that Mrs. Díaz' treatment qualifies as "Emergency Health Services," and that compliance with procedural requirements was thus excused. We agree with PCA that this argument is simply absurd. The fact that Mrs. Díaz would die of her disease if the high-dose chemotherapy with bone marrow transplantation was not provided does not qualify the services provided as "Emergency Health Services." Section II(I) of the contract defines "Emergency Health Services" as *"bona fide* emergency services provided after the onset of a sudden medical condition apparent through profusely severe and acute symptoms...."* The services provided by City of Hope to Mrs. Díaz were not provided "after the onset of a sudden medical condition." Mrs. Díaz' condition had been latent for some time. In fact, after her relapse, she received treatment and was transferred from two different hospitals before being admitted to City of Hope. The pain and suffering Mrs. Díaz endured as a consequence of her disease is a very sad matter indeed. But, we agree with Co-defendant PCA that the terms of the contract are clear, and that a serious condition is not the same as one requiring emergency services so as to preclude the pre-authorization procedures mandated by the contract. The Court finds that there is no genuine issue of material fact with respect to this allegation, and that Mrs. Díaz' treatment does not fall under the "emergency treatment" exception. *See Boston Five Cents Sav. Bank v. Secretary of Dept. of Hous. & Urban Dev.,* 768 F.2d 5, 8 (1st Cir.1985) (noting that when contract language is so clear that reasonable people could not differ as to its intended meaning, questions of contract interpretation are, in the first instance, to be decided as a matter of law), *Martin v. David T. Saunders Construction Co., Inc.,* 813 F.Supp. 893, 901 (D.Mass.1992) ("Contract interpretation is a matter of law, absent some fact related ambi-

guity in the contract."). Accordingly, City of Hope cannot recover under this theory.

## V. EQUITABLE ESTOPPEL

■ In its opposition to PCA's motion for summary judgment, Plaintiff also argues that PCA is estopped from denying coverage for failure to comply with pre-authorization requirements because it allegedly misled City of Hope to its prejudice. The principle of estoppel precludes a party from denying coverage after a representation upon which another person has reasonably and detrimentally relied. *See, e.g., Greany v. Western Farm Bureau Life Ins., Co.,* 973 F.2d 812, 821 (9th Cir.1992); *Kane v. Aetna Life Ins.,* 893 F.2d 1283, 1285–86 (11th Cir.1990). Plaintiff relies heavily on the Eleventh Circuit's opinion *Kane v. Aetna Life Ins., supra,* as grounds for the availability of equitable estoppel claims in ERISA actions. The Eleventh Circuit Court of Appeals was clear in its holding that equitable estoppel cannot be used to enlarge or modify the terms of a written ERISA plan. *See Kane, supra,* at 1285 n. 3 ("[E]stoppel may not be invoked to enlarge or extend the coverage specified in a contract."). *See also Rodrigue v. Western & S. Life Ins. Co.,* 948 F.2d 969, 971–72 (5th Cir. 1991) (precluding plaintiff from arguing that employer was estopped from denying coverage based on oral modifications to plan); *Cleary v. Graphic Communications Intern. Union,* 841 F.2d 444, 449 (1st Cir.1988) (finding that "district court did not err in holding that the fund was not estopped from denying supplemental benefits to appellants who relied on acts and representations that were clearly contradicted the written rules of the Fund"). However, it fashioned a two-part inquiry for determining when an insurer may be estopped from denying coverage: (1) the provisions of the plan at issue are ambiguous such that reasonable persons could disagree as to their meaning or effect, and (2) representations are made involving an oral interpretation of the plan. *Kane, supra,* at 1285–86.

In *Law v. Ernst & Young,* the First Circuit declined to decide on whether it could

---

11. We also reject Plaintiff's allegations regarding excuse of pre-authorization requirements on the basis of impossibility as speculative and inconsequential.

recognize an estoppel claim in the limited circumstances carved out in *Kane.* 956 F.2d 364, 370 n. 9 (1st Cir.1992). However, in the earlier case *Cleary v. Graphic Communications Intern. Union,* it had enumerated the three basic elements for allowing recovery under an estoppel theory: "(1) a representation of fact made to the plaintiff; (2) a rightful reliance thereof; and (3) injury or damage to plaintiff resulting from a denial of benefits by the party making the representation." [12] *Supra,* at 447. In *Law v. Ernst & Young,* the First Circuit expanded on this and stated that, first, "the party to be charged must 'make[ ] a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it,' " *supra,* at 368 (quoting *Phelps v. Federal Emergency Management Agency,* 785 F.2d 13 (1st Cir.1986) and Restatement (Second) of Torts § 894(1) (1977)), and second, that the "other party must rely reasonably on the misrepresentation to his detriment." *Id.* We find that Plaintiff's argument fails under both the *Kane* and *Cleary* analyses.

▇ In the first instance, Plaintiff is mistaken when it argues that application of equitable estoppel in this case will not enlarge coverage under the plan. The Health Plus Deluxe HMO plan is clear and specific regarding the terms of its coverage. Coverage is limited to services provided by the plan's selected providers and member physicians.[13] To allow reimbursement for services rendered by an out-of-network provider would be in violation of the very conditions of coverage, and would indeed expand the terms of the contract. We disagree with Plaintiff when it states that application of equitable estoppel principles would merely "excuse compliance with a procedural requirement for an *otherwise eligible claimant.*" (Pl.'s Mem. in Supp. Opp. to PCA's Mot. Summ. J. at 12) (Dkt.# 84). The network provider limitation is not a procedural requirement; the procedural requirement is the pre-authoriza-

tion necessary for excepting the network provider limitation. But we cannot assume that Mrs. Díaz would have received coverage for her treatment at City of Hope even if she had requested authorization like she was supposed to. It is entirely possible that someone else in the Health Plus HMO network was able to provide the same service as City of Hope, and that Health Plus could have made the necessary arrangements for Mrs. Díaz to receive her treatment with that other provider. While Mrs. Díaz could be considered an eligible claimant, City of Hope is not necessarily an eligible provider under the terms of the contract. As was previously stated, equitable estoppel cannot be used to expand the terms of a written ERISA contract. Accordingly, we reject Plaintiff's contention in this respect.

▇ Secondly, plaintiff fails the *Cleary* analysis because there is no evidence in the record to suggest that a definite misrepresentation of fact was made to plaintiff. Health Plus never suggested to City of Hope that they would provide coverage for Mrs. Díaz. In fact, the February 25th note to Mrs. Díaz' file (Pl.'s Decl. of Atty. in Supp. of Opp. Summ. J., Exh. A) (Dkt.# 84), stating that patient was responsible for full payment, and the March 21st fax (PCA's Stat. of Mat. Facts, Exh. 6) (Dkt.# 80), informing City of Hope that there were a number of procedural requirements to be complied with, prove the exact opposite. Also, the fact that Health Plus tried to help Plaintiff in obtaining coverage from the primary insurer does not result in a misrepresentation regarding their coverage. Moreover, any reliance City of Hope had that Health Plus would provide coverage was not reasonable. City of Hope never stopped to inquire from Health Plus whether their services were covered under the plan does not create reasonable reliance. They took a gamble and lost.

---

12. The Court in *Cleary* ultimately held that the representations at issue did not satisfy the second prong of the estoppel test and that "[r]eliance on the ability to circumvent Fund rules ... amounted to no more than a gamble—a gamble which appellants lost." *Cleary, supra,* at 448.

13. Another judge in this district stated in this respect that "[u]nlike comprehensive medical plans, HMO's generally cover only services provided by member physicians." *Morales v. Health Plus, Inc.,* 954 F.Supp. 464, 468 (D.Puerto Rico, 1997).

Thirdly, to fall under the *Kane* exception, (1) the plan at issue must be ambiguous in some respect and (2) the plan participant must detrimentally rely on an oral representation by a plan fiduciary interpreting that provision. There is nothing ambiguous about Section VI. Moreover, Health Plus never made an oral representation interpreting Section VI. Accordingly, City of Hope does not have a cognizable equitable estoppel claim in this case.

In light of the above, it is hereby ORDERED that defendants' American Airlines, Inc., Triple–S, Inc, and PCA Health Plans of Puerto Rico motions for summary judgment be and are hereby GRANTED.

**IT IS SO ORDERED.**