**Richard A. COLE, M.D., Plaintiff,**

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, Defendant.**

**No. 00–11573–MLW.**

United States District Court,
D. Massachusetts.

Sept. 21, 2001.

Richard A. Cole, M.D., Newburyport, MA, Plaintiff pro se.

James J. Ciapciak, Ciapciak & Associates, Norwood, MA, for Central States Southeast and Southwest Areas Health and Welfare Fund, Defendants.

## ORDER

WOLF, District Judge.

The court has considered the June 28, 2001 Report and Recommendation of the Magistrate Judge and the defendant's objections to it. The issue of whether venue in Massachusetts is proper pursuant to 29 U.S.C. § 1132(e)(2) because the breach took place in Massachusetts is challenging. However, this question would be moot if Massachusetts is a jurisdiction "where [the] defendant ... may be found." *See* 29 U.S.C. § 1132(e)(2). As the Magistrate Judge wrote, discovery is required to develop the information necessary to decide if the defendant is "found" in Massachusetts for the purposes of this case.

Accordingly, for the reasons described in the Report and Recommendation (Docket No. 19), Defendant's Motion to Dismiss or, Alternatively, to Transfer Venue (Docket No. 4) is hereby DENIED without prejudice.

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS, OR, ALTERNATIVELY, TO TRANSFER VENUE (¶ 4)

COLLINGS, Chief United States Magistrate Judge.

### I. Introduction

On August 4, 2000, plaintiff Richard A. Cole, M.D. ("Cole"), instituted the instant

action against Central States Southeast and Southwest Areas Health and Welfare Fund ("Central States" or "the Plan"). The defendant not only answered the four count complaint, but on October 20, 2000, also filed a motion to dismiss or, alternatively, to transfer venue, together with a memorandum and affidavit in support. Cole duly submitted an opposition to the motion and, with leave of the District Judge to whom this case is assigned, Central States filed a reply. At this juncture, the dispositive motion is in a posture for resolution.[1]

## II. The Facts

The place to begin is with a review of the allegations of the complaint, starting with an introduction of the players. At all pertinent times, Cole was a medical doctor authorized to engage in the practice of medicine in the Commonwealths of Pennsylvania and Massachusetts. (Complaint ¶ 1 § 1) In Pennsylvania where he practiced medicine as a professional corporation, Richard A. Cole, M.D., Inc., the plaintiff maintained his principal place of business in Erie. (¶ 1 § 1) At present Cole is a resident of Newburyport, Massachusetts. (¶ 1 § 1)

Regulated under the Employee Retirement Income Security Act ("ERISA"), Central States is an employee welfare benefit plan which provides benefits to its participants. (¶ 1 § 2) The administrator of the Plan is located in Rosemont, Illinois. (¶ 1 § 2)[2] According to the plaintiff, one of his patients, Barbara McClellan ("McClellan"),[3] had contracted with Central States to provide her with health care benefits and the "Plan had promised to pay all her doctor bills." (¶ 1 § 2) Any and all claims of McClellan against Central States have been assigned to Richard A. Cole, M.D., Inc., which in turn assigned them to the plaintiff as remuneration for his services to the corporation. (¶ 1 §§ 1, 3)

The underlying events as related in the complaint are as follows. On her initial visit to Cole on February 20, 1991, McClellan was treated "for a complex medical problem with the diagnosis: endocrinopathy, autonomic neuropathy, and postmenopausal osteoporosis." (¶ 1 § 4) The charge for that date in the amount of $1,603.00 was submitted to the defendant for payment. (¶ 1 § 4) So as to expedite the processing of the claim, upon request Cole contends that he forwarded further information to Central States under cover of a letter dated May 15, 1991. (¶ 1 § 4, Exh. 2, 3[4]) The February 20, 1991 claim was neither paid nor denied at that time.[5] (¶ 1 § 4)

---

1. In the latter part of April, 2001, this case was referred to the undersigned for the conduct of Rule 16(b) and/or pretrial proceedings. The motion to dismiss now under consideration shall be determined on a report and recommendation basis in accordance with 28 U.S.C. § 636(b).

2. Central States has admitted these identifying facts in its answer. (Answer ¶ 3 § 2)

3. According to Exhibit C to the Affidavit of Michael Neuman (¶ 6), Ms. McClellan was covered under the health insurance of her husband, James McClellan. James B. McClellan was the "participant" in the Plan; Ms. McClellan was the "beneficiary" as those terms are used in 29 U.S.C § 1132(a)(1).

4. The plaintiff references numerous documents throughout the complaint and has appended them as exhibits thereto. The First Circuit's lead shall be followed with respect to these documents: "Pursuant to Fed.R.Civ.P. 10(c), we treat these exhibits as 'a part [of the pleading] for all purposes,' including Fed. R.Civ.P. 12(b)(6). *McCallion v. Lane,* 937 F.2d 694, 696 (1st Cir.1991)." *Blackstone Realty LLC v. F.D.I.C,* 244 F.3d 193, 195 (1st Cir. 2001).

5. In its answer, Central States denies having received certain letters from Cole, specifically exhibits 3 and 5 to the complaint. (¶ 3 §§ 4, 5)

The plaintiff treated McClellan again on February 23, 1991, on this occasion for allergies to drugs and endocrinopathy. (¶ 1 § 4) After a claim was submitted, on April 11, 1991 Central States paid Cole $425.80 of the $432.00 charged. (¶ 1 § 4, Exh. 1)

A third medical visit was made four days later on February 27, 1991, when McClellan was once more treated by Cole "for a complex medical problem with diagnoses: allergies to drugs, endocrinopathy and postmenopausal osteoporosis." (¶ 1 § 5) The charge this time was $703.00. (¶ 1 § 5) The Plan again requested further information. (¶ 1 § 5, Exh. 4) Cole alleges that he sent additional information to Central States, but that his claim was never processed. (¶ 1 § 5, Exh. 5)

Some years later in 1998, Cole avers that he wrote to the Plan regarding the two unpaid claims, but to no avail. (¶ 1 § 6) He then undertook a formal appeal the result of which is reflected in a March 25, 1999 letter from Central States to Cole:

Dear Dr. Cole:

The Health and Welfare Board of Trustees met on March 17, 1999 and reviewed your appeal for payment of charges for services you rendered on February 20, 1991, February 23, 1991 and February 27, 1991.

The Fund's Medical Consultants reviewed the information we received regarding the charges incurred on the dates mentioned above. However, they could not identify the medical necessity for those services. In addition, our records indicate that we did not receive your charges of February 23, 1991 until February, 1998. Since that is well over the 1 year filing limitation, benefits would not allowed (sic) for those charges even if our Medical Consultant could identify their medical necessity.

The Plan states in Article XI, Section 11.13:

*Right to Review All Claims*

The Fund reserves the right to question any charge or procedure and to have the same professionally reviewed to determine if it is covered under the Plan.

The Plan states in Article XI, Section 11.03:

*Time Within Which Certain Claims Are To Be Filed*

A Claim for any loss (excluding Prescription Benefits, Total and Permanent Disability or Waiver of Premium) must be filed within one (1) year after the date of such loss. A claim for Prescription Benefits must be filed within two (2) years after the date such prescription drugs were dispensed. A claim for Total and Permanent Disability or Waiver of Premium must be filed within three years (3) after termination of Coverage.

We regret to inform you that for this reason, the Trustees voted to deny your claim. You have now exhausted all administrative appeal avenues. I regret that I could not be of more assistance to you.

Sincerely,

On Behalf of the Health and Welfare Board of Trustees

/s/

William J. Schaefer

Director

Communications and Planning

Complaint ¶ 1, Exh. 6.

Cole asserts that his claims were treated in an arbitrary and capricious manner as evidenced by the fact that not only had Central States received his February 23, 1991 claim in a timely fashion, that claim had been almost fully paid in April of 1991. (¶ 1 § 6) The plaintiff claims to have been

defrauded of his right to payment by the Plan. (¶ 1 § 7)

## III. The Claims

A claim for breach of contract is advanced in Count I of the complaint. Cole alleges that he is a third-party beneficiary to the contract between McClellan and Central States, that the failure of the Plan to pay his claims is a breach of that contract, and that as a consequence he has been damaged in the amount of $2,306.00.

Next in Count II a claim for unjust enrichment is asserted. It is alleged that the defendant has been unjustly enriched as a result of withholding the payment of $2,306.00 to the plaintiff for medical services rendered to one the Plan's beneficiaries.

Count III sets forth a claim for fraud. Cole avers that Central States engaged in a bad faith review of his claims for payment and that the resultant denial of those claims has damaged him in an amount greater than $2,306.00.

Lastly Count IV incorporates a claim for violations of ERISA. Specifically, it is alleged that

Cole seeks legal and equitable relief under 29 U.S.C. § 1132(a)(1)(B) and (a)(3) to recover benefits due to him under the terms of the plan as an assigned beneficiary, to enforce his rights under the terms of the plan, and to enjoin these acts of fraud, harassment, and abuse of Cole's claims resulting in no action being taken on them for years. Cole seeks money damages as payment for invoices submitted and equitable relief to compel Plan (sic) to review the claims in good faith and to compel them to pay the claims. Further, Plan has breached its fiduciary duty by needlessly harassing Cole and denying benefits when they should have been paid years ago.

Complaint ¶ 1 § 23.

The plaintiff not only seeks $2,306.00 in damages, he also prays for interest, costs and expenses. Alternatively, Cole requests that Central States be compelled to undertake a good faith review of his claims.

## IV. Discussion

### A. Venue in ERISA Cases

The civil enforcement provisions of ERISA provide, inter alia, that

A civil action may be brought—

(1) by a participant or beneficiary—

\*    \*    \*    \*    \*    \*

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

\*    \*    \*    \*    \*    \*

(e)(2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

Title 29 U.S.C. § 1132.

Central States moves to have the instant action dismissed for improper venue pursuant to Fed.R.Civ.P. 12(b)(3) or, alternatively, for a transfer to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). Distilled to its essence, the argument is that Massachusetts is not one of the four possible locations demarcated in § 1132(e)(2) where venue could properly be laid. Even if venue is determined to be

appropriate, the Plan asseverates that the convenience of the parties and witnesses, as well as the interests of justice, mandate that the case be transferred to Illinois.

In support of its motion, the defendant has submitted the Affidavit of Michael E. Newman (¶ 6), an employee of Central States responsible for the Research and Correspondence Department. Mr. Newman avers, in relevant part, as follows:

11. Central States covers about 133,000 active participants and retirees throughout the United States. Although most of the Central States' participants are in the Midwestern, Southeastern, and Southwestern sections of the country (sic). A few participants and retirees are located in other geographical areas. Fifteen Health and Welfare Fund active participants and retirees are in Massachusetts.

12. However, the Central States Health and Welfare Fund has no other connection with Massachusetts.

13. When Dr. Cole treated the Central States participant Barbara McClellan and generated charges which are the subject of this litigation, his treatments were performed in 1991 in Pennsylvania and his office was in Pennsylvania and his bills were sent to Central States in Illinois. The adjudication of his bills was made in Illinois by Central States.

14. By 1998, Dr. Cole had apparently moved to Massachusetts. He submitted an administrative appeal to Central States regarding the denial of payment for all of his charges for his 1991 treatments of Barbara McClellan. Dr. Cole's administrative appeal was submitted to Rosemont, Illinois and reviewed by the Trustees of the Central States Health and Welfare Fund in Rosemont, Illinois.

Affidavit Of Michael E. Newman ¶ 6.

At the outset it is important to note that

. . . courts that have considered venue in ERISA cases have construed the venue provisions very broadly. The legislative history of ERISA and the language of the Act itself demonstrate that Congress "clearly struck the balance in favor of liberal venue." *Varsic v. United States District Court,* 607 F.2d 245, 248 (9th Cir.1979); *see* H.R.Rep. No. 533, 93d Cong., 2nd Sess. 17, *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4655; 29 U.S.C. § 1001(b); *see also Wallace v. American Petrofina, Inc.,* 659 F.Supp. 829, 831 (E.D.Tex. 1987); *Bostic v. Ohio River Co. (Ohio Div.) Basic Pension Plan,* 517 F.Supp. 627, 630–31 (S.D.W.Va.1981); *Turner v. CF&I Steel Corp.,* 510 F.Supp. 537, 542 (E.D.Pa.1981).

*McFarland v. Yegen,* 699 F.Supp. 10, 12 (D.N.H.1988).

Turning to consider the four potential venue locales, Cole does not contest Central States' assertion that the Plan is administered in, and resides in, Rosemont, Illinois. The first and third alternatives for venue are thus quickly dispatched.

## B. *Venue "Where the Breach Took Place"*

The second alternative, where the breach occurred, is not so readily determined. The defendant takes the position that to the extent there has been any breach of the Plan, that breach occurred where Cole's claims for payment and subsequent appeal were all denied, to wit, Rosemont, Illinois. Cole disagrees, arguing that the breach occurred where he was to receive payment on his claims and where he received notice of the denial of his appeal, that being, of course, Massachusetts. Courts are split on this issue. *See, e.g., McFarland,* 699 F.Supp. at 13 (Where plan beneficiaries are denied what they are due, the breach may well occur where the beneficiaries were to receive

those benefits. *But see Turner [v. CF&I Steel Corp.]*, 510 F.Supp. 537, 541 (E.D.Pa. 1981) (breached occurred either where "the decisions regarding payment amounts were made" or from where the checks were sent); *Boyer v. J.A. Majors Co. Employees' Profit Sharing Plan*, 481 F.Supp. 454, 459 (N.D.Ga.1979) (where trustee issued a stop payment on a check issued to the plaintiff, the alleged breach occurred where the Plan was administered)).

Employing a contracts analysis, the majority of courts appear to take the view that in a benefits claim case,[6] the breach occurred at the place where performance was due, i.e., where the plaintiff was to receive the benefits. *See, e.g., Keating v. Whitmore Mfg. Co.*, 981 F.Supp. 890, 892 (E.D.Pa.1997) ("Time after time, courts have found that a breach that results from plaintiffs being denied benefits occurs where the benefits are to be received by the original pension holder"); *The Brown Schools, Inc. v. Florida Power Corporation*, 806 F.Supp. 146, 151 (W.D.Tex.1992); *Wallace v. American Petrofina, Inc.*, 659 F.Supp. 829, 832 (E.D.Tex.1987); *Bostic v. Ohio River Co. Basic Pension Plan*, 517 F.Supp. 627, 635–6 (S.D.W.Va.1981). The reasoning of these cases is persuasive. Venue is proper in Massachusetts because the breach took place here.

The only possible wrinkle is that Cole is the assignee of the beneficiary, and in the *Brown Schools* case, the Court held that in such a situation, venue would lie where the original beneficiary was entitled to receive the benefits but that it would not lie where the assignee would receive the benefits. *Brown Schools*, 806 F.Supp. at 151. Applying that logic to the instant case, since

the original beneficiary, or assignor, was entitled to receive the benefits in Pennsylvania, venue would lie in Pennsylvania but not in Massachusetts where Cole, as assignee, was to receive the benefits.

In other cases, venue has been determined on the basis of where an assignee was to receive the benefits. *McGaw Hospital v. Pension Trust District ¶ 9*, 1992 WL 309571, *2 (N.D.Ill. Oct. 22, 1992); *Ingalls Memorial Hospital v. Northeastern Center*, 1991 WL 24505 *2 (N.D.Ill. Feb. 20, 1991). However, in these cases, the place at which the person receiving treatment would receive benefits appeared to be the same as the place where the assignee was to receive the benefits.

In my opinion, the breach occurs where the person is entitled to receive the benefit, whether that be the assignor or the assignee. Cole, as assignee of the beneficiary, McClellan, "acquire[d] derivative standing and is able to sue as a 'beneficiary' by standing in the shoes of [his] assignor." *City of Hope National Medical Center v. Healthplus, Inc.*, 983 F.Supp. 68, 73 (D.P.R.1997) *aff'd*, 156 F.3d 223 (1st Cir. 1998). As the First Circuit held in affirming the District Court's decision in the *City of Hope National Medical Center* case:

> The term derivative means "coming from another. . . . That which has not its own origin in itself, but owes its existence to something foregoing." *Black's Law Dictionary* 443 (6th ed., 1990). It is generally understood that "the assignee acquires rights similar to those of the assignor, and is put in the same position with reference to those rights as that in which the assignor stood at the time of

---

**6.** This is in contrast with breach of fiduciary duty claims where the breach is viewed as having occurred where the fiduciaries acted in contravention to their duty or failed to act as their duty required. *See McFarland*, 699 F.Supp. at 13. Although Cole alleges both type of claims in Count IV of his complaint, the essential nature of his claim is that he was denied benefits allegedly due and owing for medical services rendered.

assignment." 3 Samuel Williston & Walter H.E. Jaeger, *A Treatise on the Law of Contracts.* § 404, at 5 (3d ed.1960).

*City of Hope National Medical Center,* 156 F.3d at 228.

Thus, taking a hypothetical case, if a beneficiary receives treatment in California but thereafter moves to Massachusetts and submits a timely claim for benefits for the California treatment, if the insurer denies the claim, the breach occurs at the place where the beneficiary was entitled to receive the benefits had the claim not been denied, i.e., Massachusetts. It would seem at odds with the liberal venue provisions of ERISA to require such a beneficiary to bring suit in California.

In my opinion, the same holds true of an assignee such as the plaintiff in the instant case. Although the treatment was rendered in Pennsylvania, the denial of the appeal occurred when the plaintiff was in Massachusetts. The breach occurred in Massachusetts where the plaintiff would have received the benefits had the appeal been allowed. Accordingly, venue is proper here.

I therefore disagree with the holding of the *Brown Schools,* 806 F.Supp. 146. In that case, the Court held that the breach occurred where the participant would have received the benefits even though the participant had assigned the right to receive the benefits to the provider of service. The facts were that the father/participant, James Ord, and daughter/beneficiary, Sandra Ord, were residents of Florida. The daughter received treatment at the plaintiff's facility in Texas, and the participant assigned his rights to receive benefits to the plaintiff's facility. The facility sued the insurer in Texas. The Court ruled as follows:

> Certainly, if Plaintiff were the policyholder entitled to receive benefits under the Plan, payments received by it in Texas would be sufficient to bestow venue in Texas under these circumstances. However, Plaintiff is simply as assignee entitled to receive directly all benefits which Mr. Ord would be entitled to receive for the payment of his daughter's treatment. Nor were any of the Defendants a party to that assignment which was signed only by James Ord.
>
> Because an assignee "stands in the shoes" of the assignor and "may pursue only whatever rights [the assignor] enjoyed under the terms of the plan," the Court determines that for purposes of venue under 29 U.S.C. § 1132(e), the breach "took place" in Florida where the policyholder resided and would have received benefits had he not assigned his right to such benefits to plaintiff. *See Memorial [Hospital System v. Northbrook Life Ins.,]* 904 F.2d [236,] 250 [(5th Cir.1990)]. Were the Court to rule otherwise, employers, ERISA plans, and plan administrators would be subject to defending suits in inconvenient venues nationwide whenever a policyholder unilaterally assigned his or her rights under a plan. Not only would this result be unfair to such defendants, but it could deter ERISA plans and administrators from approving necessary treatment for beneficiaries in foreign venues. When Plaintiff accepted Mr. Ord's assignment of benefits, it assumed Plaintiff's [sic [7]] location for purposes of ERISA as well.

*Brown Schools,* 806 F.Supp. at 151.

Several points need to be made. First, although the insurer or Plan were not

---

**7.** I assume that use of the word *"Plaintiff's location"* here is a mistake. The Court obviously meant the participant's or beneficiary's

parties to the assignment, it is clear that whatever arrangement was negotiated between the employer and the insurer, the insurer agreed to allow benefits to be assigned because a clause prohibiting the assignability of benefits was not included in the contract. Under the law, it could have been and would have been enforceable. *City of Hope National Medical Center*, 156 F.3d at 229. It is not as if the insurer could not have foreseen the problem and avoided the risk of "defending suits in inconvenient forums nationwide" by assignees if it so chose.

Second, the problem of inconvenient forums exists even in cases in which there had been no assignment. Suppose that Mr. Ord had moved to Texas; under the holding in *Brown Schools*, venue in Texas would have been proper, and the insurer would have had to defend the suit there. Why is the burden on the insurer any less in that case than it would be if there had been an assignment?

Third, I do not agree that because the assignee "stands in the shoes" of the assignor, the assignee, when it accepts the assignment, "accepts" the assignor's "location for purposes of ERISA venue as well." *Brown Schools*, 806 F.Supp. at 151. If the assignor is entitled to receive benefits where he is located, that entitlement inures to the assignee who is likewise entitled to receive benefits where it is located. In my view, the assignee receives the right, not the precise place where the right would have been exercised had the assignment not been made.

### C. Venue "Where a Defendant May Be Found"

█ Alternatively, venue may also be appropriate in this Commonwealth if Central States is found here. In the case of *Varsic v. United States District Court*, 607

location. The Plaintiff in the case was the

F.2d 245, 248 (9th Cir.1979), the Court ruled that a defendant is "found" in a district in which personal jurisdiction over the defendant was proper. It then went on to discuss the issue of personal jurisdiction in term of the "minimum contacts" analysis set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). However, in a later case, *Cripps v. Life Insurance Company of North America*, 980 F.2d 1261, 1267 (9th Cir.1992), the Court, without citing *Varsic*, held that in an ERISA case, because of the provision for nationwide service of process, there were two alternative ways to acquire jurisdiction over a defendant—"by personal service of that defendant or by means of a defendant's 'minimum contacts' with the jurisdiction." *Id.* (citation omitted). Since the ERISA statute provides for nationwide service of process, the Court in *Cripps* reasoned that since the defendant was served in the United States, such service was sufficient to establish personal jurisdiction and there was no need to engage in the "minimum contacts" analysis.

█ Thus, it appears that in ERISA cases, so long as the defendant is served within the United States, personal jurisdiction exists. *Bellaire General Hospital v. Blue Cross Blue Shield*, 97 F.3d 822, 825–32 (5th Cir.1996). However, in order to determine where a defendant is "found" for venue purposes, the "minimum contacts" test is applied.

Thus, one Court has written that:

In *Varsic*, the court ruled that venue was proper in a district, and a defendant could be found there, if a defendant had "minimum contacts" with that district, under the standard enunciated in *International Shoe* and progeny. *Varsic [v. United States District Court]*, 607 F.2d

assignee.

[245] at 248–49 [(9th Cir.1979)]. This standard has been adopted by several other courts and is what this court chooses to follow. *See, e.g., Turner,* 510 F.Supp. at 542; *Ballinger v. Perkins,* 515 F.Supp. 673, 676 (W.D.Va.1981); *Wallace,* 659 F.Supp. at 831.

Therefore, a defendant may be found in this district if he has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. The defendant's conduct must make it reasonable that the defendant would anticipate being haled into court here. *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). This can happen if a defendant "purposefully direct" its activities toward the forum district, even without a physical presence. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). Where the defendant's activities connected to the forum are not "continuous and systematic," the litigation must result from alleged injuries that arise out of or relate to those activities. *Id.* 471 U.S. at 472, 105 S.Ct. at 2182; *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984). *McFarland,* 699 F.Supp. at 14; *see also, e.g., IAM National Pension Fund v. Wakefield Ind.,* 699 F.2d 1254, 1257 (D.C.Cir.1983); *Central States Southeast & Southwest Areas Health & Welfare Fund v. Guarantee Trust Life Ins. Co.,* 8 F.Supp.2d 1008, 1010 (N.D.Ohio 1998).

The record before the Court at this time in the instant cases reveals that the Plan admittedly covers fifteen people, both active participants and retirees, in Massachusetts. Presumably the defendant is receiving payments from employers or the individuals themselves to maintain health care coverage. Moreover, the Plan is required to provided benefits to these participants in the Commonwealth. It is unknown whether the Plan covers any employers in Massachusetts, i.e., whether the active participants are employees of a Massachusetts employer or "active" for some other reason.

Courts are divided on the question of the extent to which a Plan needs to have participants in a district before it could be said to be "found" in the district. Some cases hold that if a participant works in the district under an ERISA Plan, the Plan is "found" in the district. *Varsic,* 607 F.2d at 249; *Dittman v. Dyno Nobel, Inc.,* 1998 WL 865603*5 (N.D.N.Y.1998); *Ransom v. Administrative Committee,* 820 F.Supp. 1429, 1433 (N.D.Ga.1993); *Ballinger v. Perkins,* 515 F.Supp. 673, 676 (W.D.Va.1981). Others have indicated that such facts are insufficient to establish venue. *Waeltz v. The Delta Pilots Retirement Plan,* 137 F.Supp.2d 1091, 1095 (S.D.Ill. 2001). Another Court has held that the "fact that there are or were contributing employers and retirees receiving benefits in this district, other than the Plaintiffs, is not enough to satisfy the minimum contacts test...." *Seitz v. Board of Trustees,* 953 F.Supp. 100, 102 (S.D.N.Y.1997).

Given the present state of the record, and the manner in which the issue has been handled by other courts, there is insufficient information before the Court at this time by which the Court could rule that Plan is "found" in Massachusetts.

### D. Transfer to a More Convenient Forum

Central States moves in the alternative to transfer this matter to the Northern District of Illinois "[f]or the convenience of the parties and witnesses, in the interest of justice" in accordance with 28 U.S.C.

§ 1401(a). The defendant's contention is not supported by the facts of this case, however.

Central States argues, correctly, that the Court will apply an arbitrary and capricious standard when reviewing the Trustees' decision to deny Cole's claims, and that only the administrative record that was before the Trustees when their decision was made will be considered by the Court. (Brief In Support ¶ 5 at 8–9 [8]) It is obvious, then, that the convenience of witnesses is not a consideration since there will be no witnesses called. Both the plaintiff and the defendant contend that it will be financially detrimental to them if the case is transferred (or not as the case may be) but again, the convenience of the parties bears little weight in the current circumstances. This case will require few, if any, court appearances by counsel for the parties.[9] Moreover, the administrative record has already been compiled and filed with the Court. (¶ 5 at 4)

Central States highlights the manner in which Illinois is the epicenter of this case, i.e., the Plan is located and administered there, the initial decision to deny the plaintiff's claims was made there, the appeal was filed and decided there, Cole sent correspondence to the Plan there and so on, in arguing that the interests of justice mandate a transfer. There are, however, countervailing considerations: Cole is a resident here, the breach occurred here, the defendant is found here, Central States has directed correspondence here, etc. Further, the plaintiff's choice of venue is accorded deference.

Having weighed all the relevant factors I find, in my discretion, that a transfer pursuant to 28 U.S.C. § 1404(a) is not warranted in this case.

## V. Conclusion and Recommendation

For the reasons stated, I RECOMMEND that Defendant's Motion To Dismiss Or, Alternatively, To Transfer Venue (¶ 4) be DENIED on the ground that the alleged breach occurred in Massachusetts and that a transfer is not appropriate. If the District Judge to whom this case is assigned disagrees with the conclusion that the alleged breach occurred in Massachusetts, I RECOMMEND that the plaintiff be permitted to do some discovery on the underlying facts upon which a decision can be made as to whether the Plan is "found" in Massachusetts.

## VI. Review by the District Judge

The parties are hereby advised that pursuant to Rule 72, Fed.R.Civ.P., any party who objects to these proposed findings and recommendations must file a specific written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed.R.Civ.P., shall preclude further

---

**8.** This argument assumes that the plaintiff's state law claims will be pre-empted leaving only the ERISA claim to be resolved by the Court, a scenario which seems quite likely to occur.

**9.** To the extent that there may be oral argument on a summary judgment motion in the future, Central States would not be adversely affected by having to come to Boston. Indeed it is the Plan that requested a hearing on the motion now under consideration (¶ 5 at 12) and, since it was decided on the papers, at least one trip has already been saved.

appellate review. *See Keating v. Secretary of Health and Human Services,* 848 F.2d 271 (1st Cir.1988); *United States v. Emiliano Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980); *see also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).