CITY OF HOPE NATIONAL MEDICAL
CENTER, Plaintiff, Appellant,

v.

HEALTHPLUS, INC., Defendant,
Appellee.

No. 98–1038.

United States Court of Appeals,
First Circuit.

Submitted July 28, 1998.

Decided Sept. 11, 1998.

Gary L. Tysch on brief for appellant.

Jorge E. Perez Diaz and José W. Vázquez Matos on brief for appellee.

Before SELYA, BOUDIN and LIPEZ, Circuit Judges.

LIPEZ, Circuit Judge.

Plaintiff-appellant City of Hope National Medical Center (City of Hope) filed an action asserting that defendant-appellee Health Plus, Inc. (HPI) and others were obligated to pay City of Hope for its treatment of Maria D. Diaz for leukemia. City of Hope appeals from the judgment entered in the district court granting defendants' motions for a summary judgment, primarily on the basis of the non-assignability of Diaz's rights pursuant to two health insurance policies. We affirm.

## I.

Maria D. Diaz was diagnosed with myeloid leukemia in 1992. After initial treatment in Puerto Rico, she experienced a period of remission. In late 1992, however, Diaz suffered a relapse of her cancer that required additional treatment. Diaz was referred by her treating physicians to Memorial Sloane–Kettering Hospital in New York City for consultation and further treatment. In January 1993, Diaz was referred by doctors at Memorial Sloane–Kettering to City of Hope in Duarte, California with a recommendation that Diaz undergo high-dose chemotherapy with allogenic bone marrow transplantation (HDCT/ABMT). Diaz was admitted to City of Hope in January 1993. Diaz received extensive treatment for her leukemia at City of Hope (including HDCT/ABMT), ultimately receiving services costing in excess of $250,-000.

After Diaz's admission and the commencement of her treatment, City of Hope sought coverage for Diaz's medical expenses from her health insurers. Diaz had two sources of health insurance: Segurio de Servicio de Salud de Puerto Rico, Inc. (Triple–S) was her primary insurance carrier (offered through her employer) and PCA Health Plan of Puerto Rico (formerly HealthPlus, Inc. or "HPI") was her secondary insurance carrier (offered through her husband's employer). Except under limited circumstances, only services provided by physicians and hospitals that were part of the HMO network were covered by Diaz's HPI policy; treatment outside the network was only covered if it was (i) pre-approved by the HMO or (ii) constituted emergency medical services. City of Hope did not have a contract with Diaz's HMO to provide medical services.

Triple–S denied coverage for Diaz's treatment at City of Hope because Diaz's policy did not cover HDCT/ABMT. HPI refused coverage because, inter alia, neither City of Hope nor Diaz had complied with the pre-authorization procedures mandated by Diaz's HMO policy.

In April 1993, Diaz signed a document that purported to assign her rights under her health insurance policies to City of Hope "[t]o the degree permitted under any insurance policy." The HPI health insurance policy at issue contained the following clause: "[a]ll entitlements of a member to receive

covered rights are personal and may not be assigned."

Alleging a breach of the health insurance plans, City of Hope subsequently sued Triple–S, HPI, and American Airlines Employee Benefit Plan (the administrator of her husband's employer's benefit program) for benefits and attorney's fees pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* The three defendants filed answers and thereafter moved for a summary judgment. The district court granted summary judgment for the defendants, finding, with regard to HPI, that (i) the non-assignment clause was valid, and precluded City of Hope's claims, (ii) the services rendered by City of Hope were not "emergency medical services," and (iii) HPI was not equitably estopped from denying coverage.

City of Hope filed a timely notice of appeal. We subsequently dismissed this appeal with respect to Triple–S and American Airlines Employee Benefit Plan because City of Hope failed to raise any issue regarding the district court's grant of a summary judgment for those appellees. Thus, HPI is the sole remaining appellee.

## II.

In considering a motion for summary judgment, the court's "role is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether a trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Fed.R.Civ.P. 56(c). Because the lower court makes a judgment of law, our review of a summary judgment ruling is de novo. *See IAM v. Winship Green Nursing Ctr.,* 103 F.3d 196, 199 (1st Cir.1996).

### 1. The Rights of City of Hope Pursuant to Diaz's Assignment

City of Hope argues that it is a party to a valid assignment from Diaz. That contention requires us to address the following issues: (i) whether ERISA permits the assignment of benefits under ERISA-regulated health insurance plans; (ii) whether City of Hope has standing under ERISA to assert its claim as assignee; (iii) whether the non-assignment provision in Diaz's contract violates public policy, and; (iv) whether the non-assignment provision bars City of Hope's claim.

### a. The Assignability of Health Care Benefits Under ERISA

■ In *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the Supreme Court addressed whether ERISA allowed or prohibited the garnishment of benefits under ERISA-regulated welfare plans.[1] The Court noted that while Congress prohibited the assignment or alienation of benefits under *pension* plans, 29 U.S.C. § 1056(d)(1), Congress did not include such a ban on the assignment of benefits under *welfare* plans, and reasoned that "Congress' decision to remain silent concerning the attachment or garnishment of ERISA welfare plan benefits 'acknowledged and accepted the practice, rather than prohibiting it.'" *Id.* at 837–38, 108 S.Ct. 2182 (quoting *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 516, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981)).

---

1. The definition of an employee welfare benefit plan under ERISA includes any plan or program:
   established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the

   event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

   29 U.S.C. § 1002(1).

Congress prohibited the assignment of pension benefits "[t]o further ensure that the employee's accrued benefits are actually available for retirement purposes." H.R.Rep. No. 807, 93d Cong., 2d Sess. 68 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4670, 4734. By contrast, the assignability of welfare plan benefits may further the goal of ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines,* 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). For example, "assignment to a health care provider facilitates rather than hampers the employee's receipt of health benefits." *Hermann Hosp. v. MEBA Med. and Benefits Plan,* 845 F.2d 1286, 1289 (5th Cir.1988). Given these considerations, we agree with other circuits that the logic of the Supreme Court's decision in *Mackey* allowing the garnishment of benefits under ERISA-regulated welfare plans allows the assignment generally of welfare benefits under such plans. *See Davidowitz v. Delta Dental Plan of California,* 946 F.2d 1476, 1478 (9th Cir.1991) (holding that "ERISA does not preclude welfare plan benefit assignments" and citing *Mackey* ); *St. Francis Regional Med. Ctr. v. Blue Cross and Blue Shield of Kansas, Inc.,* 49 F.3d 1460, 1464 (10th Cir.1995) (citing *Mackey* for the proposition that "Congress did not intend to enact a policy precluding [welfare plan benefits] assignability").

### b. City of Hope's Standing to Sue Under ERISA

■ Despite our conclusion that ERISA permits the assignment of welfare plan benefits, we must address the basis for City of Hope's standing to file its ERISA lawsuit pursuant to such an assignment. ERISA specifically enumerates the parties with standing to sue to enforce ERISA's provisions: participants, beneficiaries, fiduciaries and the Secretary of Labor.[2] Under ERISA, a "beneficiary" is defined as "a person [3] designated by a participant . . . who is or may become entitled to a benefit" under the plan. 29 U.S.C. § 1002(8). "Participant" is defined as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). Commenting on the exclusive nature of ERISA's list of parties with standing, the Supreme Court has cautioned that "[t]he assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute.' " *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.,* 446 U.S. 359, 361, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980)). Thus, when we previously considered ERISA's standing provision, we stated that "since Congress has carefully catalogued a selected list of persons eligible to sue under ERISA, there is no plausible rationale for us gratuitously to enlarge the roster." *Kwatcher v. Massachusetts Serv. Employees Pension Fund,* 879 F.2d 957, 965 (1st Cir.1989).

In light of ERISA's comprehensiveness and the Supreme Court's admonition to avoid expanding ERISA's class of plaintiffs, the Third Circuit has refused to recognize assignee standing under ERISA: "Congress simply made no provision in § 1132(a)(1)(B)

---

2. 29 U.S.C. § 1132, entitled "Civil Enforcement," reads in pertinent part:

(a) Persons empowered to bring civil action. A civil action may be brought—
(1) by a participant or a beneficiary . . .
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
(2) by the Secretary (of Labor), or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. . . .

3. ERISA defines a "person" as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9).

for persons other than participants and beneficiaries to sue, *including persons purporting to sue on their behalf.*" *Northeast Dep't ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147, 154 n. 6 (3d Cir.1985) (emphasis added). Although set forth as *dicta* because the court went on to find that the patient "did not, in fact, make an assignment of her claim," *id.,*[4] this language has led to the rejection of assignee standing within district courts of that circuit.[5]

Other courts have not accorded significance to some distinctions in ERISA's definitions in concluding that a health care provider-assignee has standing to sue pursuant to the express terms of the statute. In *Kennedy v. Connecticut General Life Insurance Co.,* 924 F.2d 698 (7th Cir.1991), the plaintiff health care provider, a chiropractor, sued the insurer for payment on the basis of an assignment from the wife of an employee whose employer had a group health policy with the insurer. *See id.* at 699. The *Kennedy* court concluded that the health care provider had standing as a beneficiary under ERISA, which defines beneficiary as "a person designated by a participant .... who is or may become entitled to a benefit" under the plan. 29 U.S.C. § 1002(8). This conclusion reflects the premise that the spouse of an employee covered by an ERISA-regulated welfare plan meets the definition of a "participant." In fact, as the statute makes clear, "participant" is defined in ERISA only with reference to an employee or a former employee. *See* 29 U.S.C. § 1002(7). The wife of an employee could not herself be a participant under her husband's plan; she could only be a beneficiary. The *Kennedy* court did not acknowledge such a distinction, holding that the wife of the employee was "unquestionably a participant as § 1002(7) uses that term ...." *Id.* at 700.[6]

The district court in this case also accepted the proposition that the spouse of an employee meets the ERISA definition of a participant: "Diaz was a participant in an employee welfare benefit plan sponsored by her husband's employer." 983 F.Supp. at 70. It offered the further observation that "by virtue of the assignment, City of Hope could ostensibly become a beneficiary—i.e. one designated by a *participant* to become entitled to a benefit under the plan." *Id.* at 73 n. 7 (emphasis added). In fact, however, Diaz was neither an employee nor a former employee, and hence she did not meet ERISA's clear definition of "participant." Therefore, Diaz could not confer beneficiary status on City of Hope, given ERISA's definition of a beneficiary as "a person designated by a participant ... who is or may become entitled to a benefit" under the plan. *See* 29 U.S.C. § 1002(8).

The district court did not, however, base its decision on this incorrect characterization of Diaz's status. Instead, it focused on Diaz's status as a beneficiary of her husband's health care plan and concluded, in conformity with the approach of a number of circuits, that a health care provider, as the assignee of a beneficiary, "acquires derivative standing and is able to sue as a 'beneficiary' by standing in the shoes of his assignor." 983 F.Supp. at 73 (citing *Misic v. Building Serv. Employees Health and Welfare Trust,* 789 F.2d 1374, 1378 (9th Cir.1986)). We agree with this approach, which is consistent with our position in *Kwatcher* that there is no justification for expansion by the court of the

---

**4.** The *ILGWU* court did, however, go on to find jurisdiction pursuant to 28 U.S.C. § 1331 because it viewed the case as "arising under" federal common law, and because "[f]or the odd case that does not fall under [29 U.S.C.] § 1132, a finding of federal jurisdiction promotes certainty and uniformity[.]" *ILGWU,* 764 F.2d at 159.

**5.** *See Health Scan, Ltd. v. Travelers Ins. Co.,* 725 F.Supp. 268, 269 (E.D.Pa.1989) (relying on *ILGWU* for the proposition that standing under ERISA does not extend to assignees); *but see Children's Hosp. of Pittsburgh v. 84 Lumber Co. Med. Benefits Plan,* 834 F.Supp. 866, 869 (W.D.Pa.1993) (granting standing under ERISA to health care provider assignee).

**6.** *See also Stone v. Stone,* 632 F.2d 740 (9th Cir.1980). In *Stone,* the Ninth Circuit confronted the limited definition of "participant" for purposes of an ex-spouse's claim to rights under California's community property laws. The Ninth Circuit reasoned that "ERISA would not permit an employee to share a right through marriage yet deny the employee's ex-spouse a federal remedy," and so held that "[the ex-spouse] qualifies as a 'participant'" for standing under ERISA. *Id.* at 742–43.

roster of persons eligible to sue under ERISA. *See Kwatcher,* 879 F.2d at 965.

■ The term derivative means "coming from another.... That which has not its own origin in itself, but owes its existence to something foregoing." Black's Law Dictionary 443 (6th ed.1990). It is generally understood that "the assignee acquires rights similar to those of the assignor, and is put in the same position with reference to those rights as that in which the assignor stood at the time of assignment." 3 Samuel Williston & Walter H.E. Jaeger, A Treatise on the Law of Contracts § 404, at 5 (3d ed.1960). If an assignee seeking relief in court stands in the place of an assignor, there has been a substitution rather than an expansion of the parties.

In *United States v. Carter,* 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957), the Supreme Court recognized assignee standing under the Miller Act. The Miller Act protects contractors on federal construction projects "in lieu of the protection they might receive under state statutes." *Id.* at 216, 77 S.Ct. 793. Like ERISA, the Miller Act confines standing to an enumerated class: persons who have "furnished labor or material in the prosecution of the work provided for in such contract ... and who ha[ve] not been paid in full therefor[.]" *Id.* at 215, 77 S.Ct. 793 (citing 40 U.S.C. § 270b(a)). The Supreme Court rejected the argument that the assignees of persons who had "furnished labor or material" lacked standing to sue:

> The surety also argues that the trustees are not entitled to recover the promised contributions under § 2(a) of the Miller Act, since they are [not] persons who have furnished labor or material ... [A] *denial of an assignee's right to sue on the bond might deprive those for whom the security was intended* of a fair chance to realize upon their claims by assignment....
>
> The trustees stand in the shoes of the employees and are entitled to enforce their rights.

*Id.* at 218–20, 77 S.Ct. 793(emphasis added)(footnotes omitted). In this ERISA context as well, we conclude that Congress did not intend to disturb the common law principles of assignment. *See Pilot Life Ins. Co. v.*

*Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (discussing Congress' "expectations that a federal common law of rights and obligations under ERISA-regulated plans would develop"); *see also* 3 Samuel Williston & Walter H.E. Jaeger, A Treatise on the Law of Contracts § 446A, at 328 (3d ed.1960) (explaining that "the assignee has, and has had for more than a century, a legal right ... enforceable in courts of law") (citing *Welch v. Mandeville,* 14 U.S. (1 Wheat.) 233, 4 L.Ed. 79 (1816)).

■ Although the district court recognized the validity of derivative standing under ERISA, it denied City of Hope standing to sue because it found the assignment from Diaz invalid. This conclusion wrongly conflates two distinct inquiries. The standing inquiry does not focus on the merits of the dispute. It focuses only on "whether the litigant is entitled to have the court decide the merits of the dispute." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Consequently, City of Hope's standing depends on a "colorable claim" that it is an assignee of a beneficiary. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (refining ERISA's definition of "participant" to include former employees "who have a 'colorable claim' to vested benefits"); *see also Kennedy,* 924 F.2d at 700 (applying the "colorable claim" standard in the standing context and citing *Firestone* ). As the assignee of an ERISA beneficiary, City of Hope satisfies the standing requirements of section 1132 and has a right to have the court decide the merits of its claim against HPI.

### c. The Non–Assignment Clause and Public Policy

■ City of Hope argues that the district court erred in giving effect to the non-assignment clause in Diaz's HMO policy because such a clause is contrary to the public policy advanced by ERISA. In effect, City of Hope asks us to read into ERISA's allowance for the assignability of ERISA-regulated welfare plan benefits a bar to the contractual non-assignability of such benefits. Once again, the Supreme Court's reasoning in *Mackey* is persuasive: "[Congress] had before it a pro-

vision to bar the alienation or garnishment of ERISA plan benefits, and chose to impose that limitation only with respect to ERISA pension benefit plans, and not ERISA welfare benefit plans. In a comprehensive regulatory scheme like ERISA, such omissions are significant ones." *Mackey,* 486 U.S. at 837, 108 S.Ct. 2182. By its silence on the assignability of ERISA-regulated welfare plan benefits, "Congress intended not to mandate assignability, but intended instead to allow the free marketplace to work out such competitive, cost effective, medical expense reducing structures as might evolve." *Davidowitz,* 946 F.2d at 1481.

Consistent with the other circuits which have addressed this issue, we hold that ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the negotiations of the contracting parties. *See St. Francis Reg'l Med. Ctr.,* 49 F.3d at 1464 (enforcing a nonassignment clause in an ERISA-regulated health insurance welfare benefit plan against a health care provider); *Arkansas Blue Cross and Blue Shield v. St. Mary's Hosp.,* 947 F.2d 1341 (8th Cir.1991), *cert. denied,* 504 U.S. 957, 112 S.Ct. 2305, 119 L.Ed.2d 227 (1992) (same). Therefore, we conclude that the non-assignment provision in Diaz's HMO policy is not contrary to public policy.

### d. The Scope of the Non–Assignment Clause

■ In the alternative, City of Hope argues that even if non-assignment clauses in ERISA-regulated plans are generally enforceable, the district court erred in applying this non-assignment clause to its claim as a health care provider. Instead, City of Hope argues that the non-assignment clause in Diaz's contract was intended only to preclude her ability to transfer rights to actual medical services to another individual, or to preclude the diversion of benefit funds to an unrelated debt.

One court of appeals has adopted this distinction, finding that a non-assignment clause which read that "[n]o employee shall at any time ... have any right to assign his rights or benefits" did not prohibit the assignment of "causes of action arising after the denial of benefits" as distinguished from "rights or benefits." *See Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters, and Engineers Health and Welfare Plan,* 25 F.3d 616, 619 (8th Cir.1994). We think this approach would strain the plain meaning of the contract language at issue in this case that "[a]ll entitlements of a member to receive covered rights are personal and may not be assigned." As we have previously stated, "straightforward language in an ERISA-regulated insurance policy should be given its natural meaning." *Hughes v. Boston Mut. Life Ins. Co.,* 26 F.3d 264, 268 (1st Cir.1994) (quoting *Burnham v. Guardian Life Ins. Co.,* 873 F.2d 486, 489 (1st Cir.1989)). We agree with the district court that under the clear terms of the contract, Diaz could not assign her rights to City of Hope.[7]

### 2. Equitable Estoppel

■ Finally, City of Hope claims that HPI is equitably estopped from denying coverage. In *Law v. Ernst & Young,* we explained that "the party to be charged [with an estoppel] must 'make [ ] a definite misrepresentation of fact to another person.'" *Law v. Ernst & Young,* 956 F.2d 364, 368 (1st Cir.1992) (quoting *Phelps v. FEMA,* 785 F.2d 13 (1st Cir.1986) and Restatement (Second) of Torts § 894(1) (1977)). In support of its estoppel claim, City of Hope points to a March 23, 1993 fax from an HPI employee to City of Hope that reads: "It is important to remember as I spoke to you a month ago, that (Diaz) has some responsibilities to follow so she can have services coverage." The fax then made reference to Section VI of Diaz's HMO policy, which included the terms under which health services would be covered. Given the fact that Diaz's treatment had begun in January 1993, City of Hope argues

7. The district court, as an alternative basis for its holding, rejected City of Hope's arguments that (i) compliance with the conditions precedent under Diaz's contract was excused by impossibility and (ii) treatment of Diaz constituted emergency services under the terms of Diaz's contract. Because we hold that the non-assignment provision precludes City of Hope's claims against HPI, we do not discuss the merits of those claims.

that this reference in March 1993 to the procedural requirements of the health insurance policy held out the promise of recovery if there was compliance with the procedures.[8] We agree with the district court that a statement emphasizing the procedural requirements of a health insurance plan is far from the "definite misrepresentation of fact" about a willingness to pay for medical services necessary to establish an estoppel claim. There is no evidence in the record that HPI ever represented that it would cover City of Hope's costs for Diaz's treatment.[9]

For the foregoing reasons, HPI was entitled to judgment as a matter of law. The judgment of the district court is AFFIRMED.

8. City of Hope also raises related estoppel arguments in its appeal, *i.e.*, that City of Hope as Diaz's "representative" was entitled to certain disclosures which were not forthcoming, and that HPI was not prejudiced by Diaz's failure to follow HPI's procedures and should be estopped from denying benefits by operation of the "notice-prejudice rule," which protects insured persons from procedural errors. These arguments were not presented to the district court and "absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal."

*Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Trans. Co.*, 953 F.2d 17, 21 (1st Cir.1992). No such "extraordinary circumstances" are present, and we decline to consider these arguments.

9. As was the case in *Law*, we need not decide in this case whether we would recognize an estoppel claim under ERISA. Assuming, arguendo, an estoppel claim would be recognized, City of Hope has failed to allege sufficient facts to maintain such a claim. *See Law*, 956 F.2d at 370 n. 9.