PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1730
_____

WALGREEN CO; KROGER CO,
                                        Appellants

v.

JOHNSON & JOHNSON; JANSSEN BIOTECH INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cv-02357)
District Judge:  Hon. J. Curtis Joyner
_____

Argued
November 12, 2019

Before:   JORDAN, SCIRICA, and RENDELL, *Circuit
Judges.*

(Filed February 21, 2020)
_____

Anna T. Neill
Scott E. Perwin     [ARGUED]
Michael A. Ponzoli
Lauren C. Ravkind
Kenny Nachwalter
1441 Brickell Avenue
Four Seasons Tower, Ste. 1100
Miami, FL   33131
        *Counsel for Appellants*

William F. Cavanaugh, Jr.     [ARGUED]
George A. LoBiondo
Adeel A. Mangi
Patterson Belknap Webb & Tyler
1133 Avenue of the Americas
New York, NY   10036

Thomas O. Barnett
Ashley E. Bass
Covington & Burling
850 10th Street, NW
One City Center
Washington, DC   20001

Leslie E. John
Burt M. Rublin
Ballard Spahr
1735 Market Street -51st Floor
Philadelphia, PA   19103
        *Counsel for Appellees*

Eric L. Bloom
Monica L. Kiley
Hangley Aronchick Segal Pudlin & Schiller
2805 Old Post Road – Suite 100
Harrisburg, PA   17110

Barry L. Refsin
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square
18th & Cherry Streets, 27th Floor
Philadelphia, PA   19103
     *Counsel for Amicus Appellants*
     *CVS Pharmacy Inc. and Rite Aid Corp*

Moira E. Cain-Mannix
Brian C. Hill
Marcus & Shapira
301 Grant Street
One Oxford Centre – 35th Floor
Pittsburgh, PA   15219
     *Counsel for Amicus Appellant*
     *Giant Eagle Inc.*

———————————

OPINION OF THE COURT
———————————

JORDAN, *Circuit Judge*.

This case raises the question of whether an assignment of federal antitrust claims is barred by a contract provision proscribing the assignment of any "rights or obligations under" that contract. The District Court answered in the affirmative

and granted summary judgment against the appellants, who all want to assert antitrust claims they purportedly obtained by assignment from a party bound by the anti-assignment clause. We conclude that the District Court erred. The antitrust claims are a product of federal statute and thus are extrinsic to, and not rights "under," a commercial agreement. Accordingly, we will reverse the grant of summary judgment and remand for further proceedings.

## I. BACKGROUND

Appellants Walgreen Co. and the Kroger Co. (which, for convenience, we refer to collectively and in the singular as "Walgreen") operate retail pharmacies throughout the United States. One of the many pharmaceuticals that Walgreen dispenses to the public is Remicade, a biologic drug used to treat various autoimmune diseases. Remicade is marketed and manufactured by Appellees Johnson & Johnson and Janssen Biotech, Inc. (which, again, for convenience we refer to collectively and in the singular as "Janssen"). Janssen does not sell Remicade directly to Walgreen. Instead, Walgreen procures Remicade from two wholesale distributors: AmerisourceBergen and Cardinal Health (once more, collectively and in the singular "Wholesaler"). Wholesaler acquires Remicade pursuant to a Distribution Agreement with JOM Pharmaceutical Services, Inc. ("JOM"), a Janssen affiliate.[1] Only Wholesaler and JOM are identified as parties

---

[1] Although JOM entered into a separate Distribution Agreement with each of AmerisourceBergen and Cardinal Health, those agreements are identical in all material respects. Consequently, and for the sake of simplicity, we refer only to a single Distribution Agreement.

4

to the Distribution Agreement. It is undisputed that New Jersey law governs the Distribution Agreement.

This appeal pertains to the scope of the anti-assignment language in Section 4.4 (the "Anti-Assignment Provision") of the Distribution Agreement. In relevant part, the Anti-Assignment Provision states that "neither party may assign, directly or indirectly, *this agreement or any of its rights or obligations under this agreement* … without the prior written consent of the other party…. Any purported assignment in violation of this section will be void." (JA at 102 (emphasis added).)

In January 2018, Wholesaler assigned to Walgreen "all of its rights, title and interest in and to" its claims against Janssen "under the antitrust laws of the United States or of any State arising out of or relating to [Wholesaler]'s purchase of Remicade[.]"[2] (JA at 217.) Less than six months later,

---

[2] Specifically, AmerisourceBergen assigned its rights to Walgreen Co. and Cardinal Health assigned its rights to Kroger Co. Because the assignments are worded slightly differently but are identical in all material respects, for the sake of simplicity, we refer only to a single assignment.

The parties dedicated a significant portion of their briefing to disputing the question of whether federal common law or New Jersey law governs the "validity" of Wholesaler's assignment to Walgreen. (*See, e.g.,* Opening Br. at 13-26; Answering Br. at 9-14, 17-22). However, that dispute is contingent on the assignment at issue falling within the scope of the Anti-Assignment Provision. As discussed *infra*, we hold that the assignment does not convey "rights under" the Distribution Agreement, and, thus, is not subject to the Anti-

Walgreen exercised the rights Wholesaler had assigned to it and filed suit against Janssen, asserting various federal antitrust claims relating to Remicade. At bottom, Walgreen alleges that Janssen used its size and bargaining power in the broader pharmaceutical market to enter into exclusive contracts and anticompetitive bundling agreements with health insurers that suppressed generic competition to Remicade, which in turn allowed Janssen to sell Remicade at supracompetitive prices.

Janssen moved to dismiss Walgreen's complaint on the ground that the Anti-Assignment Provision invalidated Wholesaler's purported assignment of its antitrust claims to Walgreen. It is undisputed that, if the Anti-Assignment Provision prevents the assignment, then, under the Supreme Court's seminal decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), Walgreen, an "indirect" Remicade purchaser, would lack antitrust standing to assert claims against Janssen relating to Remicade.[3] To take account of the potentially

_____

Assignment Provision. Accordingly, we do not reach the parties' subsidiary choice-of-law arguments pertaining to the assignment's "validity."

[3] In *Illinois Brick*, the Supreme Court created a "direct purchaser" rule for antitrust claims, "providing that only entities that purchase goods directly from alleged antitrust violators have statutory standing to bring a lawsuit for damages[.]" *Wallach v. Eaton Corp.*, 837 F.3d 356, 365 (3d Cir. 2016). "The rule of *Illinois Brick* was founded on the difficulty of analyzing pricing decisions, the risk of multiple liability for defendants, and the weakening of private antitrust enforcement that might result from splitting damages for overcharges among direct and indirect purchasers."

6

dispositive Distribution Agreement, the District Court converted Janssen's motion to dismiss into a motion for summary judgment.

After full briefing, on March 25, 2019, the District Court granted the motion for summary judgment and entered judgment in Janssen's favor on all counts. In reaching its decision, the Court concluded that Janssen was a party to the Distribution Agreement with standing to enforce its terms, and that, under New Jersey law, the Anti-Assignment Provision precluded Wholesaler from assigning its federal antitrust claims against Janssen to Walgreen, thus depriving Walgreen of antitrust standing. This timely appeal followed.

## II. DISCUSSION[4]

Walgreen presses a number of arguments in opposition to the District Court's dismissal of its claims, but we need only

---

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 439 (3d Cir. 1993). Because only Wholesaler, and not Walgreen, purchased Remicade directly from Janssen, the alleged antitrust violator, Walgreen is an "indirect purchaser" under *Illinois Brick*.

[4] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1337. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. "It is well established that we employ a plenary standard in reviewing orders entered on motions for summary judgment, applying the same standard as the district court." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

7

address one: whether Wholesaler's assignment to Walgreen of its antitrust claims against Janssen was barred by the Anti-Assignment Provision.[5]  Because the answer to that question is no, we will reverse and remand for further proceedings.

The facts of this case are in all material respects the same as those of *Hartig Drug Company Inc. v. Senju Pharmaceutical Company Ltd.*, 836 F.3d 261 (3d Cir. 2016). In *Hartig*, an indirect purchaser of medicated eyedrops asserted antitrust claims against the eyedrops' manufacturer pursuant to an assignment of antitrust claims from a "direct purchaser" distributor.  *Id.* at 264.  The district court granted the defendant manufacturer's motion to dismiss the indirect-purchaser plaintiff's claims on the ground that "an anti-assignment clause in a distribution agreement between [the manufacturer] and [the distributor] barred any assignment of antitrust claims from [the distributor] to [the indirect purchaser], leaving [the indirect purchaser] without standing to sue and divesting the Court of subject matter jurisdiction."  *Id.*  We vacated and remanded, holding that the district court erred both in concluding that the anti-assignment clause implicated that court's subject matter jurisdiction and in considering the terms of the distribution agreement, which was neither integral to nor attached to the indirect-purchaser plaintiff's complaint.  *Id.* at 269, 273-74.

---

[5] Walgreen disputes whether Janssen, as a matter of law, actually is a party to the Distribution Agreement with concomitant rights to enforce the Anti-Assignment Provision. Because we conclude that the Anti-Assignment Provision does not reach Wholesaler's assignment of its antitrust claims to Walgreen, we need not, and do not resolve Janssen's disputed party status.

8

Given that the district court might have occasion to again interpret the distribution agreement on remand, considerations of judicial economy prompted us to note our "doubt about the Court's interpretation of the [distribution agreement] as barring the assignment of antitrust causes of action[.]" *Id.* at 274. In that regard, we observed, albeit in *dictum*, that "[b]ecause [the wholesaler]'s antitrust causes of action arise by statute, there is a serious argument that they do not fall within the [distribution agreement]'s plain language limiting assignment of 'rights and obligations hereunder'— that is, they arise by operation of an extrinsic legal regime rather than by contract." *Id.* at 275 n.17.

That observation in *Hartig* provides the appropriate rule of decision here: the statutory federal antitrust claims asserted in Walgreen's complaint are extrinsic to, and not "rights under," the Distribution Agreement. Applied to the Anti-Assignment Provision, the scope of which is limited to Wholesaler's "rights under" the Distribution Agreement, it becomes evident that the provision has no bearing on Wholesaler's antitrust claims, which rely only on statutory rights and do not implicate any substantive right under the Distribution Agreement. Accordingly, the Anti-Assignment Provision does not invalidate Wholesaler's assignment of antitrust claims to Walgreen or otherwise present a bar to Walgreen's standing to assert those antitrust claims against Janssen. Our holding here is consistent with the substantial weight of decisions on this issue, which do not bind us but nevertheless are persuasive.[6]

---

[6] *See, e.g.*, *In re Opana ER Antritrust Litig.*, No. 14-C-10150, 2016 WL 738596, at *5 (N.D. Ill. Feb. 25, 2016) ("Even

Janssen raises three arguments in opposition to the holding we adopt today: (i) New Jersey law, which governs the Distribution Agreement, recognizes statutory causes of action as "rights under" an agreement; (ii) the term "rights under" an agreement "encompasses any rights engendered by virtue of the relationship the agreement established" and thus includes

under a broad reading of the non-assignment provisions, the prohibition on assigning 'this Agreement' or 'delegat[ing]' any 'duties or responsibilities' would only serve to limit the parties' ability to assign their rights and obligations under the [agreement]. The Court does not read this language to include statutorily-based antitrust claims, because such claims are not based on any substantive right or duty found in the [agreement]s themselves.") (alteration in original); *United Food & Commercial Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, No. 14-MD-02521-WHO, 2015 WL 4397396, at *6 (N.D. Cal. July 17, 2015) ("The [distribution agreements]' non-assignment clauses are limited to the assignment of duties and obligations under the [distribution agreements] themselves and do not include causes of action sounding in antitrust arising from those agreements."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 11-00711 SI, 2011 WL 3475408, at *4 (N.D. Cal. Aug. 9, 2011), *reconsidered in-part on other grounds*, No. C 11-00711 SI, 2011 WL 5573930 (N.D. Cal. Nov. 16, 2011) ("Here, the anti-assignment clauses are limited to each party's rights and obligations under the contracts…. [L]itigation over antitrust claims cannot be seen as a 'right or duty' contemplated by the contract. The State has not brought the assigned claims based on any substantive right or duty found in the contract itself.").

10

Walgreen's antitrust claims, which ultimately flow from the Distribution Agreement; and (iii) the rationale of *Hartig* has been "eclipsed" by our subsequent decisions in *Wallach v. Eaton Corp.*, 837 F.3d 356 (3d Cir. 2016), and *American Orthopedic & Sports Medicine v. Independence Blue Cross Blue Shield*, 890 F.3d 445 (3d Cir. 2018). (Answering Br. at 22-30 (internal quotation marks omitted).) Each of those arguments falls short.

Regarding the application of New Jersey law to the Anti-Assignment Provision, Janssen correctly notes that neither *Hartig* nor any of the antitrust cases interpreting the scope of anti-assignment clauses that Walgreen cites (and which we find persuasive) applied New Jersey law. But that fact is not dispositive. Janssen cites no case, let alone a case applying New Jersey law, in which any court has found that federal antitrust claims fall within the scope of an anti-assignment clause prohibiting the assignment of "rights under" an agreement. Nor does Janssen identify any particular feature of New Jersey law that suggests it would diverge from the weight of authority on this issue.[7] To the contrary, the New Jersey cases that Janssen does cite, in which anti-assignment

---

[7] Courts that have considered the scope of anti-assignment clauses in the antitrust context often have looked to Section 322 of the Restatement (Second) of Contracts as part of their analysis. *In re Opana ER Antritrust Litig.*, 2016 WL 738596, at *5; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4345316, at *3. New Jersey courts similarly look to the Restatement when analyzing anti-assignment clauses. *Owen v. CNA Ins./Cont'l Cas. Co.*, 771 A.2d 1208, 1218 (N.J. 2001).

11

clauses were held to foreclose statutory causes of action, are readily distinguishable. In each of those cases, unlike the antitrust claims at issue here, the statutory claims that were precluded by an anti-assignment provision all flowed from an underlying breach of one or more provisions of the contract containing the anti-assignment provision. *See Somerset Orthopedic Assocs., P.A. v. Horizon Blue Cross & Blue Shield of New Jersey*, 785 A.2d 457, 459–60 (N.J. App. Div. 2001) (out-of-network physician's claims for payment pursuant to terms of benefit plan foreclosed by plan's anti-assignment language); *Chee Li v. BMW of N. Am., LLC*, No. L-3014-13, 2017 WL 2625965, at *3 (N.J. Super. Ct. App. Div. June 19, 2017) (claim under federal warranty statute foreclosed by anti-assignment provision where cause of action stemmed from car dealer's purported refusal to honor warranty and the anti-assignment provision specifically included "the right to pursue the remedy under the [ ] warranty." (alteration in original)).[8]

---

[8] Janssen also cites *Prospect Medical, P.C. v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, No. L-8681-09, 2011 WL 3629180, at *5 (N.J. Super. Ct. App. Div. Aug. 19, 2011), asserting that in that case a "clause prohibiting insurance policyholders from assigning benefits under their insurance plan to healthcare providers barred providers' claims against insurer under state Consumer Fraud Act and RICO statute." (Answering Br. at 23.) However, that misstates *Prospect Medical*'s holding. The court in *Prospect Medical* held that no claims were properly dismissed pursuant to the anti-assignment clause because there was an outstanding issue of fact as to whether the insurer had waived its right to invoke that clause. *Prospect Medical*, 2011 WL 3629180, at *5. The court dismissed the Consumer Fraud Act and RICO claims

12

At most, those cases suggest that, when a dispute ultimately centers on the vindication of contractual rights, a valid anti-assignment clause can prevent an assignee from enforcing those contractual rights through non-contractual means, including related statutory causes of action. However, none of those cases, directly or indirectly, stands for the proposition that, under New Jersey law, a statutory claim that is separate from any contractual right constitutes a "right" under that agreement.

In an unpersuasive attempt to overcome that reality, Janssen next argues that Wholesaler's antitrust claims are "rights under" the Distribution Agreement because that term "encompasses any rights 'engendered by virtue of the relationship the agreement established,'" and Wholesaler could not have purchased Remicade and accrued standing to assert antitrust claims but for the Distribution Agreement. (Answering Br. at 24-26 (quoting *Am. Fin. Capital Corp. v. Princeton Elecs. Prods.*, No. CIV. A. 95-4568, 1996 WL 131145, at *9 (E.D. Pa. Mar. 20, 1996)).) But that argument is derived from plainly inapposite case law, namely cases from the arbitration context that address the question of when claims "arise out of" or "arise under" an agreement. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 508 (1974) (addressing arbitration clause covering "any controversy or claim (that) shall arise out of this agreement or the breach thereof"); *Am. Fin. Capital Corp.*, 1996 WL 131145, at *7, *9 (holding scope of arbitration clause mandating arbitration of "any disputes arising under" agreement covered claims "engendered by virtue of the relationship the agreement established or

based on pleading failures that were entirely independent of the anti-assignment clause. *Id.*

13

otherwise addressable by reference to the duties and obligations set out in the agreement.").[9] The terms "arise out of" and "arise under" are facially broader, more encompassing, and ultimately distinct from, the concept of "rights under" an agreement.

Moreover, Janssen's argument substantially overstates the degree to which Walgreen's antitrust claims are derived from the Distribution Agreement. Through its antitrust claims, Walgreen is not attempting to invoke any substantive right specified in the Distribution Agreement. Although the

---

[9] Janssen's reliance on equally distinguishable case law from the forum selection and choice-of-law contexts, which similarly fail to address the question of whether a statutory claim is a "right under" an agreement, is also misplaced. *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999) (common law fraud claim within scope of choice-of-law provision covering "[t]his Agreement and the rights and obligations of the parties hereunder … including all matters of construction, validity and performance." (alteration in original)); *Cheney v. IPD Analytics, LLC*, 583 F. Supp. 2d 108, 121 (D.D.C. 2008) (analyzing scope of forum selection clause encompassing any claim which "arises out of" the agreement); *Rini Wine Co. v. Guild Wineries & Distilleries*, 604 F. Supp. 1055, 1057–59 (N.D. Ohio 1985) (forum selection clause applicable to "any action entered under the [distributor] agreement" encompassed antitrust claims where "[t]he incident from which this dispute arises is indeed the termination of the distributor agreement," and "Plaintiff has chosen to explain defendant's conduct as an 'unlawful combination and conspiracy' in violation of federal and state antitrust laws in its complaint.").

Distribution Agreement contains a provision requiring the parties to comply with applicable law, even if Walgreen was asserting a claim under that provision, which it is not, the "existence of a boilerplate duty to abide by applicable law does not manifest the requisite intent to expand the scope of the non-assignment provision[] beyond [its] plain language[,]" *In re Opana*, 2016 WL 738596, at *5, particularly where, as here, the Distribution Agreement "do[es] not specifically mention antitrust law or the assignment of legal claims[,]" *United Food*, 2015 WL 4397396, at *6. Similarly, the fact that the Distribution Agreement set the price that Wholesaler paid for Remicade does not bring Walgreen's antitrust claims within the Anti-Assignment Provision's scope. The mere existence of a fact that is relevant to both the antitrust claims at issue and the Distribution Agreement does not transform those claims into "rights under" the Distribution Agreement. *Cf. CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 173, 175 (3d Cir. 2014) (holding "factual connections between the Agreement and the factual underpinnings of the Complaint do not render these claims arbitrable," where arbitration clause broadly required arbitration of disputes "regarding the performance or interpretation of the Agreement").

Finally, we disagree with Janssen's assertion that the "persuasive force" of our reasoning in *Hartig* has been "eclipsed" by our decisions in *Wallach* and *American Orthopedic*. (Answering Br. at 27-29.) *Wallach* did not involve a contractual anti-assignment provision. Instead, we addressed the entirely distinct question of whether the assignment of antitrust claims must be supported by consideration. *Wallach*, 837 F.3d at 361. In that context, we maintained our prior recognition that both contractual rights and non-contractual causes of action are assignable, and that

15

the argument that non-contractual causes of action cannot be assigned rests "on an antiquated distinction between contractual rights and choses in action that no longer has a significant effect on the common law." *Id.* at 369. Nowhere did we hold, or even suggest, that statutory antitrust claims are rights under a contract.[10]

Janssen's reliance on *American Orthopedic* also lacks merit. Although *American Orthopedic* did involve an anti-assignment clause in an ERISA benefit plan, only the clause's validity, not its scope, was at issue. *Am. Orthopedic*, 890 F.3d at 449-53. To the extent we opined indirectly on the clause's scope by affirming the district court's holding that the clause foreclosed an assignee plaintiff's ERISA claims, Janssen's attempt to extrapolate that ERISA-centric conclusion beyond its proper context to the antitrust facts of this case is not persuasive. *American Orthopedic*, like the other case law Janssen cites, is inapposite because the statutory ERISA claims foreclosed by the anti-assignment clause flowed directly from an underlying breach of a contractual right,[11] which right could

---

[10] We likely would not have had occasion to do so even if the scope of the assignment in that case was at issue. The assignment in *Wallach* conveyed all antitrust causes of action "arising out of or relating to" purchases of certain vehicles. *Wallach*, 837 F.3d at 371 n.17. That language is very different from, and appreciably broader than, the disputed portion of the Anti-Assignment Provision here.

[11] Indeed, we have recognized that "[c]laims for benefits based on the terms of an ERISA plan are contractual in nature and are governed by federal common law contract principles."

16

not be assigned. No such concern exists here, as Walgreen is seeking to enforce a purely statutory right, not a substantive right originating from the Distribution Agreement.[12]

*Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75 (3d Cir. 2011).

[12] Janssen also overstates both the holding in *City of Hope National Medical Center v. HealthPlus, Inc.*, 156 F.3d 223 (1st Cir. 1998), and the extent to which we adopted the reasoning of that case in *American Orthopedic*. Contrary to Janssen's assertion, the First Circuit did not "expressly reject[] the argument that an anti-assignment clause prohibiting assignments of rights or benefits does not extend to statutory causes of action arising [out of] the denial benefits." (Answering Br. at 28 (second alteration in original and internal quotation marks omitted).) Rather, the First Circuit simply held that the Eighth Circuit's analysis of an anti-assignment clause that prohibited the assignment of "rights or benefits under" an ERISA plan and related trust was inapplicable to the much broader anti-assignment clause at issue in the matter before it (and much broader than the Anti-Assignment Provision here), which provided that "[a]ll entitlements of a member to receive covered rights are personal and may not be assigned." *City of Hope*, 156 F.3d at 229 (citing *Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters, & Engineers Health & Welfare Plan*, 25 F.3d 616, 619 (8th Cir.1994)). Moreover, while it is accurate that we cited *City of Hope* in *American Orthopedic*, we did so only as support for the proposition that anti-assignment clauses in ERISA plans are permissible. *Am. Orthopedic*, 890 F.3d at 453.

17

In short, we observed in *Hartig* that there was a serious argument that statutory antitrust claims were not "rights under" an agreement. We now come down clearly on this question: statutory antitrust claims are not "rights under" a contract, such as the Distribution Agreement. Janssen's arguments attempting to avoid or undermine that conclusion are unconvincing.

## III. CONCLUSION

For the foregoing reasons, we will reverse the decision of the District Court and remand for further proceedings.